## SAMUELS and another vs. BLANCHARD and others.

PLEADING AND PRACTICE. *Joinder of parties plaintiff, in tort, or in covenant — Presumption in appellate court as to nature of the action.*

DEED *of water power construed — Owner of a specific amount of water entitled to a head sufficient for beneficial use — Action for wrongful diversion.*

1. Owners in common of a mill, who have derived their respective rights under different conveyances, may join in an action of *tort* for a diversion of water from their mill, but cannot join in an action for breach of defendants' covenants in reference to such water.

2. Where the summons was for a money demand on contract, but the allegations of the complaint, though apparently designed to state a cause of action on contract, are sufficient to show a joint cause of action in tort, and the cause was tried as such, judgment for plaintiffs will not be reversed on the ground that they could not join in the action as one on contract.

3. Where the facts showing that plaintiffs could not join in the action as one on contract appeared on the face of the complaint, and the objection was not taken by demurrer, the appellate court will not assume

that it was taken at the trial (against the statement of the respondents' counsel to the contrary), merely because there was a motion for a nonsuit, the grounds of which do not appear.

4. Where, by conveyances of water at a dam, a particular owner is entitled to a priority in the use of a specified *amount* of water, this must be held to imply that he is entitled to such a *head* of water as will enable him to make a beneficial use of that amount in propelling machinery.

5. If, in such case, the head becomes so low that parties subsequent in right, by continuing to use the water, prevent such beneficial use by the party prior in right, they are liable as for a wrongful diversion.

APPEAL from the Circuit Court for *Jefferson* County. By sundry conveyances in 1846, Cole, Bailey & Co., proprietors of land on the east side of Rock river, in the city of Watertown, in said county, and of a half interest in a dam abutting on said land, and in the water power thereby created, conveyed portions of their said land, and certain specified amounts of water, to Reed & Green, to one Hamlin, and to one Acker; and each of these deeds contained a clause declaring that said grantors "reserve the exclusive right to themselves to take and use seven hundred square inches of water, or a quantity of water equal to seven hundred square inches, discharged from" a certain specified point in a mill-flume or race located on their said land. In 1850, the persons owning interests in said lands and power entered into a contract, under seal, by which it is covenanted, among other things, "that Cole, Bailey & Co. shall have the right to use their seven hundred inches of water, which is now preferenced to them," at a certain point therein designated. In 1854, the interest of Cole, Bailey & Co. in said lands and power was deeded to H. W. Blanchard. In 1862 and 1863, Blanchard deeded portions of the land and power to two different parties, with a reservation to himself of seven hundred square inches, similar to that above recited. In May, 1866, the present defendants, *Nathaniel*, *Milton* and *Lydia H. Blanchard*, who had succeeded to the interest of H. W. Blanchard, leased to *Thomas* and *Alexander Samuels* (the present plaintiffs) for five years an undi-

vided half of a certain brick mill belonging to said grantors, and situate upon a mill-race, on a certain block 40, near said dam; and also an undivided half of the "water thereunto appurtenant;" and *Thomas Samuels* sold and assigned his interest in this lease to *Alexander Samuels*. In November, 1866, the defendants deeded to *Thomas Samuels* an undivided half of said block 40, and also an "undivided one-half of the seven hundred square inches of water reserved and preferred in and by the deeds" first above mentioned, executed by Cole, Bailey & Co. in 1846 and 1847. This deed contained the usual covenant for the quiet and peaceable possession.

The complaint, after setting forth the written contract entered into by the proprietors in 1850, as above described, and one of the deeds previously executed by Cole, Bailey & Co., showing the reservation of seven hundred square inches aforesaid, and also the lease to *Thomas and Alexander Samuels*, and the deed to *Thomas Samuels* last above described, alleges that plaintiffs, by virtue of said deed and lease, entered into full possession of the flouring mill on said block 40, "and from that time to the present have operated and used the same, from time to time, as they have been enabled to do by the quantity of water furnished by the defendants; but for a large portion of the time they have not been able to operate, use and enjoy said premises by reason of an insufficient quantity of water to propel the machinery of said mill, and by reason of their having only a small portion of the said seven hundred inches of water conveyed and provided for by and in said deed and lease; and they have thereby lost the use, occupancy and quiet enjoyment of said premises, in all for the space of at least three months, and suffered damages thereby to the amount of $2,000, and that through the fault and direct interference of defendants, as hereinafter set forth." It is then alleged that defendants have a mill above that of the plaintiffs, on the same race, and have

operated the same when the stage of water in the river was such that, by so doing, they consumed and diverted from plaintiff's mill the water necessary for running it, and this they have done "for the space, in all, of three months, to plaintiffs' damage $2,000, in violation of said deed and lease, and defendants' covenant therein contained." It is further alleged that plaintiffs "have not been permitted to have and enjoy quiet and peaceable possession and occupancy of said premises and the water appertaining and belonging to the same, and in said deed and lease granted and leased ; but, on the contrary, since the execution of said deed and lease, defendants have willfully diverted from said mill the water belonging to the same," etc.

The defendants denied, generally, and also alleged that "plaintiffs have no right to draw any water to their said mill from said race, except when the openings through which the same is drawn, at the level where the same are located, do not exceed * * seven hundred square inches ; that about six months before the commencement of this action, plaintiffs wrongfully increased such openings to more than one thousand square inches, with the intent to draw all the water that can be discharged through such increased openings, and to unjustly deprive defendants of the same ;" and that, before the commencement of this action and since, plaintiffs have run their mill by wrongfully drawing all the water they could through such enlarged openings. There was a reply in denial of these allegations.

An objection by defendants to the admission of any evidence under the complaint was overruled. The circuit court, after refusing a nonsuit, found that plaintiffs, during the time alleged in the complaint, owned and had the exclusive right to use seven hundred square inches of water, in the manner and at the place alleged ; and that, during said time, defendants diverted and consumed five hundred of said seven hundred square

inches of the same, as alleged, to plaintiffs' damage $230. Judgment accordingly; from which defendants appealed. The cause was first argued in this court at the January term, 1869.

*Enos & Hall,* for appellants, contended that there was no language in the complaint charging a tort; that the summons and complaint both showed the action to be on the defendants' covenants; and that plaintiffs, being in possession under titles of different dates and natures, could not join in an action on their diverse covenants. 4 Kent's Com. (6th ed.) 368; 1 Washb. R. P. 421, 437. 2. R. S. ch. 5, § 9, and ch. 86, § 5, cut off all liability on the *implied* covenants of the deed to *Thomas Samuels,* and the averments of the complaint do not bring the case within its *express* covenants. But *Alexander Samuels,* who alone holds under the lease, might sue alone on its implied covenants. *Mayor of New York v. Mabie,* 3 Kern. 151. 3. From their unity of possession, if it existed as averred, plaintiffs might perhaps have joined in an action of tort. But this they have not done, neither was any possession found by the court. Or, if there was a tort, they might waive that, and each might have sued alone on his contract; but they are bound by their election. 2 Till. & Shearm. Pr. 62, 63, and cases there cited. 4. No cause of action, good in favor of both plaintiffs, being stated, the objection to any evidence, and the motion for a nonsuit, performed the office of a demurrer. How. Code, 232, 233. And the judgment must be reversed because it has no basis on which to stand. 5. The findings were not supported by the evidence. 6. There was no statement in the conveyances, no averment in the complaint, no proof, and no finding, as to the *head* of water to which plaintiffs were entitled, while the evidence clearly showed that there never was any time when plaintiffs did not have a sufficient flow of water to fill a lateral aperture in the race of seven hundred square inches,

which is all they claim, and all that the court found them entitled to. At the time of the original reservation of an exclusive right to seven hundred square inches of water, this was an undeveloped power, with capacities probably unknown to grantors and grantees. That no particular head was intended, either in the grants or the reservation, is certain from the facts, first, that none is mentioned; and, secondly, that the grantors had no head which they could control. They owned only the east half of the dam, and were subject to have the head drawn down, against their utmost efforts, by the owners of the west half of it. *Brown v. Bowen*, 30 N. Y. 519 ; *Runnels v. Bullen*, 2 N. H. 532 ; Washb. on Easements, 272, 344. The only thing they could do, therefore, was to define the size of the lateral opening in the flume or race through which their several grantees should have the right to draw water therefrom. This they did, reserving to themselves, in all deeds to other persons than the plaintiffs, the right, as against their grantees, to draw the water which would pass through a seven hundred inch aperture, at whatever head, until, in some proper judicial proceeding, a court of equity should determine the head at which the water should be maintained, as in *Smith v. Smith*, 10 Paige, 470. It was this reserved right that was deeded and leased to the plaintiffs ; and there was no proof that it had ever been interfered with. 7. Counsel also contended that plaintiffs would not be entitled to any water, while maintaining an opening in the race at their mill larger than seven hundred square inches, and that the court erred in not finding the facts upon the issue raised by the pleadings on that question.

*Orton & Mulberger*, for respondents, in support of the rulings, findings, and judgment cited *Hollingsworth v. Dunbar*, 5 Munf. 199 ; *Biglow v. Battle*, 15 Mass. 313 ; *Lull v. Fox & Wis. Imp. Co.*, 19 Wis. 100 ; *Sher-*

*wood v. Milwaukee Gas Co.*, 15 id. 318 ; *Hall v. Gale*, 20 id. 402 ; Angell on W. C., §§ 397, 442.

A re-argument was ordered upon the following questions : 1. Whether the action was in tort or contract. 2. Whether it could be maintained by plaintiffs as an action on contract. 3. Whether, if it was an action on contract, and the evidence showed a good cause of action in tort, plaintiffs could have judgment. There are on file no printed briefs of the second argument.

The following opinion was filed at the June term, 1869 :

PAINE, J.   On the first argument of this case, it was submitted on the part of the respondents' counsel upon a printed brief, which did not discuss one of the points made by the appellants' counsel, probably for the reason that it was made for the first time in this court.   As the point seemed to us to present some difficulty in maintaining the action, a re-argument was ordered on that alone.

The action was brought for damages for a diversion of water from a mill which the plaintiffs' occupied together. The summons was not what is called one for relief, but one for a money demand arising upon contract.   The complaint set forth, fully, the origin of the rights of the plaintiffs to the water which they claimed the right to use at their mill.   And it appears, from its allegations, that these rights had been derived from the defendants through different separate conveyances, so that a right to an undivided half of the water claimed was vested in one of the plaintiffs through a lease and an assignment, and the right to the other undivided half was vested absolutely in the other plaintiff by grant.   The language of the complaint seems aptly designed to state a cause of action for a breach of the respective covenants of the lease and the deed for quiet enjoyment.   And as the summons was one upon contract, the question arose, whether the action must not be regarded necessarily as

one upon contract, and, if so, whether the plaintiffs could join in such an action, neither one having any interest in the covenants in favor of the other. Upon the re-argument, the respondents' counsel conceded, that, if the action must be regarded as one on contract, the plaintiffs could not join, which really seems very clear. But he claimed that the allegations of the complaint were sufficient to show a joint cause of action in tort, in favor of the plaintiffs as tenants in common, for a wrongful diversion of the water from their mill, and that the case was tried as such by both parties in the court below. That the allegations of the complaint, though apparently designed to state a cause of action upon contract, are sufficient to show such a joint cause of action in tort, we have no doubt. And although, if the question had been presented properly at the preliminary stage of the case, the character of the summons, taken in connection with the form of the allegations of the complaint, might have required it to be decided that the action must be in strictness regarded as upon contract, yet, notwithstanding this, if the question was not raised, and the complaint is sufficient, as it is, to show a joint cause of action in tort, and the case was so tried upon the merits by both parties, we have come to the conclusion that it must be so treated here.

There is nothing to show that the question was raised at all in the court below. It is true, a motion for a nonsuit was made. And we at first thought that might be sufficient to authorize the defendants to take advantage of it. But the record does not disclose what were the grounds of the motion. The fact that such a motion was made is not necessarily inconsistent with the theory that the case was tried as an action of tort. The motion may have been founded merely upon a claim by the defendants' counsel that the plaintiffs had failed to sustain such an action by the proof. The facts that, if the action was considered as one upon contract, the objec-

tion appeared upon the face of the complaint and might have been taken advantage of by demurrer, and that no demurrer was interposed, and that both parties introduced fully their evidence as to the whole controversy, in the absence of any thing showing that this distinct question was raised at all in the court below, we think, sufficiently establish the claim of the respondents' counsel, that it was tried there as an action of tort, without objection, and must be so treated here.

The material legal question presented in the case requires the construction of the provisions in th various conveyances, by which the seven hundred square inches of water to which the plaintiffs are now entitled were originally reserved, and have since been conveyed. There can be no doubt that the intent and effect of those provisions were, to create a priority of right in the owners of these seven hundred square inches. The language of the deed where the reservation was first made by the original proprietors was, that they reserved to themselves "the *exclusive* right to take and use seven hundred square inches of water," etc. This word "exclusive" clearly imports that the right so reserved was to be prior and paramount to that of other parties created by that conveyance. This was clearly the construction put upon it by the parties themselves; for, in the general agreement relating to the water power, made by all the owners, they speak of their seven hundred inches as being "*preferenced*" to Cole & Bailey.

Much has been said in this and other cases, growing out of this water power, about the uncertainty arising from the absence of any stipulation or provision about the "head" of water, to which the respective parties were to be entitled. But whatever difficulty, if any, that fact may create in other cases, we think that, where it is provided that a particular owner is entitled to priority over others, that fairly and reasonably implies that he is to

be entitled to a head of water sufficient to enable him to make a practical, beneficial use of the amount to which he is entitled, for the purpose of propelling machinery. This is essential to the enjoyment of the priority of right.

And it follows, that whenever, in such case, the head of water in the dam becomes so low, that if parties subsequent in right continue to use the water they will prevent such a practical beneficial use by the party having the prior right, they are then wrongfully diverting his water, and become liable to an action for the damages.

Such a state of facts was shown here. We shall not allude in detail to the testimony ; but it shows, clearly, that the defendants were in the habit of using the water when the head was so low that the plaintiffs could not make any practical beneficial use of their seven hundred inches. Of course, where other parties are also perpetrating a similar wrong, as is claimed here, it becomes impossible ever to apportion the damage with entire accuracy. But we cannot say that the evidence does not show that the defendants have themselves inflicted damage to the amount found by the court below. On the contrary, we think it sustains the finding upon that point.

The allegations in the answer that the plaintiffs had enlarged their opening so as to draw more than the seven hundred inches to which they were entitled, do not constitute any defense. If true, and the defendants are prejudiced, they have their remedy. But it constitutes no reason why the defendants should be allowed to divert with impunity the amount to which the plaintiffs are entitled.

*By the Court.*—The judgment is affirmed, with costs.

A motion for a rehearing was denied at the January term, 1870.