WATSON and others vs. THE MILWAUKEE & MADISON RAILWAY COMPANY.

*March 15 — April 4, 1883.*

RAILROADS: EMINENT DOMAIN. *(1) Award, on taking of land: appeal: parties. (2) Estoppel. (3) Interest on deposit after withdrawal. (4–8) Evidence as to value of land. (9) Instructions to jury. (10) Special verdict.*

1. The commissioners of appraisal should not make a separate award of damages to each tenant in common of a single tract of land of which a part has been taken for the use of a railroad. And where such commissioners, after fixing the value of the land taken and the damages to the remainder of the tract, have apportioned the whole amount among the several tenants in common, an appeal by the railroad company should be from the gross award. On such appeal the tenants in common and all other parties in interest are plaintiffs, and are not entitled to separate trials.

2. The amount of an award upon the taking of land belonging to several heirs was paid into court by the railroad company. With the assent of such heirs, the administrator of their ancestor gave the bond required by sec. 1850, R. S., and withdrew the money so deposited. *Held,* that the administrator was thereafter estopped to deny that he was a party to the proceeding, and, the amount of the award having been diminished by the verdict on an appeal by the company, there was no error in rendering judgment against him for the amount of such diminution.

3. In such a case the railroad company is entitled, also, to recover interest upon the amount by which the award is decreased, from the date of the withdrawal of the deposit.

4. A witness who has been examined on behalf of the owners of land across which a railroad has been built to show that such land was suitable to be platted into village lots and its probable value when so platted, may be cross-examined in regard to sales of lots in the vicinity, though some of such sales were made four or five years previous. The limits within which evidence of such sales may be given is very much in the discretion of the trial judge.

5. Where the land was so situated that, in order to plat it into village lots with a proper street, it would be necessary to open the street through the lands of other parties, the probable expense of opening such street is not a proper subject for the *opinion* of a witness.

6. A witness, who had testified on behalf of the owners to the value of land before and after the railroad was built, was asked, on cross examination, if he did not know that the owners had offered the land for sale before the railroad went through for $12,000, and answered: "I understood they had, but it don't make any difference in the worth of it." *Held*, that a refusal to strike out such answer as hearsay was not such error as would work a reversal of the judgment.

7. Evidence that a former owner of land had refused an offer of a certain sum therefor is inadmissible to show the value of such land at the time of a subsequent condemnation of a portion thereof by a railroad company.

8. Evidence of the price for which land was actually sold after the location of a railroad across it may be introduced by the railroad company to prove its real value at that time, and as an admission of such value on the part of the vendors; and such evidence is entitled to great weight as compared with the mere opinions of witnesses.

9. The jury should be instructed upon all questions fairly in the case, but it is not error to refuse to emphasize any particular phase of the case in favor of either party.

10. Where the questions submitted to the jury for a special verdict are such that the answers thereto will dispose of the whole case, it is not error to refuse to submit other questions which have a bearing only upon the amount of the damages

APPEAL from the Circuit Court for *Waukesha* County. The case is thus stated by Mr. Justice TAYLOR:

"This is a proceeding under the statute to take a part of a tract of land situated in the village of Waukesha, belonging to *Elizabeth J. Watson*, *Ellen D. Monteith*, *Hattie L. Gove*, and *Mattie E. Cole*, heirs of William White, deceased, for the track of the respondent's railway through said village, and to assess the damages which the said company ought to pay for taking the same. The administrator was made a party to said proceeding, as a person having some interest in said tract of land which might be affected by said taking.

"Upon this appeal there is no objection made against the regularity of the proceedings on the part of said company in

procuring the judgment of the proper court that the company was lawfully entitled to take a part of said tract of land for the track of their road, or in the appointment of commissioners to ascertain and appraise the compensation to be made to the owners or persons interested in said land, a part of which was to be taken for said railroad track, under the provisions of secs. 1846 and 1847, R. S. 1878; nor that the proceedings of the commissioners in making said appraisement, and in reporting their doings in the matter to the proper court, were in any respect irregular.

"The report and award made by the commissioners, after reciting their appointment and qualification, and giving notice to the proper parties of the time and place of meeting to examine the premises and make their appraisement and award of damages, and giving at length a description of the tract of land owned by the said appellants in said village across which the track of said railroad was to run, and of the part of said tract to be taken for the purposes of said railway, proceeds to assess the compensation to be paid therefor by said company, and make their award and report as follows:

" 'And that we did appraise, ascertain, and determine the value of said premises, tract, or parcel of land proposed to be taken, with the improvements thereon, and of each separate interest therein, and the damages sustained by the owner by reason of the taking thereof and the use of the same by said *Milwaukee & Madison Railway Company*, and that we fix the compensation to be made therefor to each of such owners and parties interested as follows: .

" 'We fix and determine the value of the land so taken, and the amount of damages to the remainder of said tract by reason of the taking and using thereof by said railway company, over and above any real or supposed benefits and advantages which the parties in interest may derive from the construction of the proposed railroad, or the construction of

the proposed improvements connected with such road, and over and above all special benefits to the real estate adjoining the lands so taken, at the sum of $2,500.

" 'That we award to *Elizabeth J. Watson*, as owner in fee of an undivided one fourth of said lands, for such taking and for such damages, the sum of $625.

" 'That we award to *Ellen D. Monteith*, for her estate or separate interest in said land, being an estate as owner in fee of an undivided one fourth, for such taking and damages, the sum of $625.

" 'That we award to *Hattie L. Gove*, as owner in fee of an undivided one fourth of said land, and for such taking and for such damages, the sum of $625.

" 'That we award to *Mattie E. Cole*, as owner in fee of an undivided one fourth of said land, and for such taking and for such damages, the sum of $625.

" 'And we further certify that upon such hearing the *Milwaukee & Madison Railway Company* appeared before us by Jas. G. Jenkins, its counsel; and Jason Downer, as attorney for each of the above-named parties, appeared on the part of the persons interested in said land.'

" This report and award were filed in the office of the clerk of the circuit court of said county of Waukesha on the 17th day of December, 1880, and on the 15th of January, 1881, the railroad company, by its attorneys, filed in said clerk's office the following appeal in said matter:

" 'In the matter of the application of the *Milwaukee & Madison Railway Company*, to condemn to its use certain real estate, and for the appointment of commissioners of appraisal, pursuant to section 1847 of the Revised Statutes.

" '*The Milwaukee & Madison Railway Company*, the petitioner in the above-entitled proceedings, hereby appeals to the circuit court of Waukesha county from the award made and filed herein by the commissioners of appraisal, on the 17th day of December, 1880, with respect to the land taken

by said company from and claimed to be owned by *Elizabeth J. Watson, Ellen D. Monteith, Hattie L. Gove,* and *Mattie E. Cole,* heirs at law of William White, deceased, and in which *Thomas G. Watson,* as administrator of the estate of William White, deceased, claims an interest, and whereby there was awarded for such taking and damages, to the said *Elizabeth J. Watson,* the sum of $625; to the said *Ellen D. Monteith* the sum of $625; to the said *Hattie L. Gove* the sum of $625; and to the said *Mattie E. Cole* the sum of $625.

" 'And the said company appeals from the whole and every part of said award.'

"After the filing of this appeal, the appellants, *Elizabeth J. Watson, Ellen D. Monteith, Hattie L. Gove,* and *Mattie E. Cole,* appeared in said court by their attorney, Jason Downer, and moved said court to dismiss such appeal, on the ground that there are several awards, one to each of the said parties, *Watson, Monteith, Gove,* and *Cole,* and not one joint award to the four, and that the appeal is not from any one of the awards separately, but from all jointly. This motion was overruled, and exceptions taken by the appellants. The case was duly noticed for trial in said circuit court. On February 21, 1881, the defendant railway company, having previously paid to the clerk of the court $2,500, the amount of all the sums awarded to the appellants, the administrator of the estate of William White, deceased, by the written consent of all of the said appellants, and pursuant to an order of the court, received said money, first giving a bond according to the provisions of sec. 1850, R. S. 1878, in the sum of $1,000, as directed by the court. On the 25th of May, 1882, the action was duly noticed and brought on for trial in said circuit court, and thereupon each of the appellants objected to the trial of the case as one action by all the owners as plaintiffs or joint plaintiffs, for the reasons: *First,* that the award to each plaintiff is a separate award; *second,* in legal effect there are four separate reports as well as four separate

awards; and, *third,* that there should have been an appeal —
a separate appeal — from each separate award; and that by
the statute the said plaintiffs are entitled to separate trials;
and each plaintiff demanded and insisted upon a separate
trial.    The motion for separate trial was denied, and plaint-
iffs duly excepted.

" The plaintiffs then objected to a jury being called in the
action, and to any further proceedings therein, and to any
trial thereof, because: (1) The court had no jurisdiction of
the subject matter of the action; (2) it had no jurisdiction
of the parties; (3) no appeal has been taken by the *Milwau-
kee & Madison Railway Company,* such as the statute re-
quires, and none that is of any validity in law.    These
objections were also overruled and the appellants duly ex-
cepted.    A jury was then called and sworn, and the case
tried.    The jury found that the plaintiffs were entitled to
damages for the land taken by the railway company, and for
the injury to their lands not taken, $1,400; and thereupon
judgment was entered in favor of the railway company
against all the appellants for the sum of $1,100, and interest
thereon from the time the said administrator took said money
out of court, and costs, amounting in all to the sum of
$1,283.60; and from this judgment the plaintiffs appeal to
this court.    Exceptions were taken in the course of the trial
to the introduction and rejection of evidence, to the instruc-
tions given by the court to the jury, and to the refusal of
the court to give certain instructions requested by the appel-
lants, and also to the allowance of interest on the money
withdrawn from the court by the administrator."

*Jason Downer,* for the appellants.

For the respondents there was a brief by *Jenkins, Winkler
& Smith,* and oral argument by *Mr. Jenkins.*

Taylor, J.    The first question raised by the learned coun-
sel for the appellants in this case is one of considerable im-

portance, relative to the practice to be pursued in cases of this kind under the statute. The learned counsel has made a very forcible argument for the purpose of showing that in all proceedings by railroad companies under the statute to condemn lands for the use of the company, and to ascertain and assess the damages the owners thereof are entitled to as against the railroad company taking the same, every party having a separate estate or interest therein has the right to have his damages assessed and determined separately from every other owner, and that every such owner, if dissatisfied with the amount awarded to him, may have a separate appeal to the circuit court, and a separate trial in that court; and further, that if the railroad company is dissatisfied with the award made in favor of any owner of a separate estate, it must appeal from the separate award to such owner.

This question, in some of its aspects, was considered by this court in the case of *Spaulding v. M., L. S. & W. Railway Co.*, *ante*, p. 304, and a conclusion was arrived at in that case in direct conflict with the rule which the learned counsel for the appellants asks us to establish in this. In that case a rehearing was granted upon that question, but, unfortunately for this court, no argument of that question was made by either of the learned counsel in their briefs submitted upon such rehearing. It is perhaps just to the counsel in that case as well as to the court to say that the rehearing was granted mainly because that question had not been fully argued by the counsel upon the original hearing, and because we desired that the point of practice should be fully heard before the final decision of the case. After hearing the exhaustive arguments of the question by the learned counsel for the respective parties in this case, we have no excuse for not making a final determination of the questions raised.

In the case at bar it will be seen that the owners of the strip of land taken by the company for its track, and the

parcel of land from which such strip is taken, are all part owners of the entire parcel, none of them owning any separate part of the parcel of land from which the strip is taken. They are tenants in common of the whole tract, so far as this record shows their ownership, and are, therefore, so far jointly interested in the damages awarded for the injury to their estate or interest in the tract, that if they were remitted to their common law remedy to recover such damages, they would be required to join as plaintiffs in the action. Tenants in common must unite as plaintiffs, even at common law, to recover damages for any injury done to the real estate. *De Puy v. Strong*, 37 N. Y., 372; *Austin v. Hall*, 13 Johns., 286; *Low v. Mumford*, 14 Johns., 426; *Decker v. Livingston*, 15 Johns., 479; *Hill v. Gibbs*, 5 Hill, 56; *May v. Slade*, 24 Tex., 205; *Hobbs v. Hatch*, 48 Me., 55. In some of the states they are allowed to join or sever in the action. *Hobbs v. Hatch, supra; Webber v. Merrill*, 34 N. H., 202; *Hibbard v. Foster*, 24 Vt., 542; *McGill v. Ash*, 7 Pa. St., 397.

This court has gone further, as well as the courts of the state of New York, and has held that, in actions to recover damages for an injury to real estate, not only tenants in common may be joined as plaintiffs, but all may join who have strictly separate estates, as tenants for years or life, and the remainder-man. *Schiffer v. City of Eau Claire*, 51 Wis., 385; *Swarthout v. C. & N. W. Railway Co.*, 49 Wis., 625; *Pratt v. Radford*, 52 Wis., 114; *Samuels v. Blanchard*, 25 Wis., 329; *Bassett v. Warner*, 23 Wis., 673–686. These cases and many others which might be cited show that, if this were a proceeding at common law to recover damages of the railroad company for taking for railroad purposes and injuring the appellant's land by such taking, it would not only be proper, but necessary, that they should all join in one action. If they must join in an action to recover their damages, it would seem highly proper that the railroad com-

pany should join them in a proceeding against them to take their land and ascertain their damages for so doing.   Under our statute, the appeal by the railroad company from the award of damages to the owners and parties interested leaves the case in the position of an action by the owners to fix and recover the damages.   The appeal simply brings the case before the court for a new assessment of damages, but the owners of the land are declared to be the plaintiffs in that proceeding, the same as though the appeal had been taken by them.   There is nothing, therefore, in the rules governing actions, either at common law or under the code, which would prohibit the railroad company from bringing one appeal against all the tenants in common, and making them all joint plaintiffs in the action in the circuit court. The proceeding in this way is manifestly promotive of the ends of justice, and tends to lessen the expenses of litigation.

It remains to inquire whether there is anything in the statute which makes it imperative upon the parties to a proceeding of this kind to take separate appeals as to each common owner of the same tract of land, and whether each common owner has, upon such appeal, an absolute right to a separate trial as to his damages.

After a careful consideration of all the provisions of the statute, we are clearly of the opinion that it will not bear that construction.   In giving construction to a statute, we should be governed by the evident object sought to be accomplished by its enactment.   The statute in question was enacted in order, *first*, to give railroad companies a convenient and speedy method of taking from the owners such land as may be necessary for the construction and operation of their several roads; and, *second*, to secure to the owner or owners of the lands so taken a fair appraisal of the value of the land so taken, and of the damages done to the remainder of the tract from which the same is taken by reason of the taking, construction, and use of it for a railroad.

To accomplish this, secs. 1846 and 1847 prescribe the manner of proceeding on the part of the company to designate the lands required to be taken by it, and after having determined what land it requires, the statute provides that the company shall designate in its petition to the court, among other things, "*the names of the parties who own or occupy such real estate, as near as may be,* and if any of such persons are infants, their ages as nearly as may be, and if any are persons of unsound mind or unknown, that fact shall also be stated." The filing of the petition is declared to "be the commencement of a suit in said court." This must be construed to mean a suit by the railroad company against the persons therein named as the owners of the lands sought to be taken, or it must mean a suit against such persons and the lands sought to be taken. When the petition is filed, an order is made by the court requiring notice to be given to all parties interested in the lands to be taken. This notice may be served personally or by publication; practically it is always by publication when there are many parcels of land, or many owners or occupiers. Upon the day fixed for the hearing, if there be any infants, idiots, or persons of unsound mind who appear to be owners, the court appoints guardians *ad litem*, to look after their interests; and thereupon the court, after hearing the parties, makes an order determining whether the company is entitled to take the lands described in the petition, and if the court decides that the company has the right to take the lands, or any of them, it then proceeds to appoint "three disinterested and competent freeholders who reside in the county or some adjoining county, where the premises to be appraised are situated, *commissioners to ascertain and appraise the compensation to be made to the owners or persons interested in the real estate determined necessary to be taken in such county for the purposes of the corporation.*"

Sec. 1848 provides that the commissioners shall take an oath of office, and when requested in writing by the railroad

company or any person interested in a tract of land described in the petition, they shall proceed to perform their duties in respect to the land mentioned in such request, and thereupon shall give notice to each party interested of the time and place when and where they will meet "*to consider the amount of compensation to which the land-owner is entitled,*" etc., after giving such notice, and proof thereof being made. This section further provides that "the commissioners shall view such of the premises described in the petition as are described in such written request, and hear the allegations of the parties, and appraise, *ascertain, and determine the value of each such tract or parcel of land proposed to be taken, with the improvements thereon, and of each separate estate therein, and the damages sustained by the owner by reason of the taking thereof,* and fix the amount of the compensation to be made to each of such owners therefor; and in fixing the amount of such compensation, said commissioners shall not make any allowance or deduction from the value of the real estate taken, on account of any real or supposed benefits which the parties in interest may derive from the construction of the proposed railroad, or the construction of the proposed improvement connected with such road, for which such real estate may be taken; but special benefits to the real estate adjoining the lands so taken, shall be allowed in deduction of any damages sustained by the owner to such adjoining real estate." The section then provides that "the commissioners shall, within twenty days after the last viewing of any lands so taken, make and file in the office of the clerk of the circuit court of such county a report of their proceedings concerning such lands, making *separate reports in relation to the lands of each distinct owner, setting forth the award made for each tract thereof, or separate estate therein, to the owner or owners thereof.*"

Sec. 1849 provides for an appeal in the following language: "Within thirty days after the filing of the report of the

commissioners in the office of the clerk of such circuit court, *any party may appeal to such circuit court from any award made by the commissioners, by filing in the office of said clerk a written notice of appeal.* Upon his receiving such notice, the appeal shall be considered an action pending in court, subject to a change of the place of trial and appeal to the supreme court, as other actions, and shall be entered by the clerk upon the records of the court, *by setting down the owner or owners of the land for which such award was made, and who are parties to the appeal, as plaintiffs,* and the railroad corporation as defendant." Sec. 1850 provides as follows: " The report of the commissioners shall be recorded by the clerk in whose office the same is filed, in the judgment book of such court, and at any time after the making of such award the railroad corporation may pay *to the owners of the lands so taken, or to the clerk of said court, for the use of such owners,* the amounts awarded by the commissioners, and thereupon may enter upon, take, and use the land for the purposes for which it was condemned, and may move said court or judge, upon twenty-four hours' notice, that a writ of assistance may be issued to put such corporation into possession of the same; and said court or judge shall, upon the corporation giving security in such additional amount as the court or judge shall require, to pay any *judgment which shall be recovered against it, on appeal,* award such writ. If such corporation be in possession, or be put in possession, of such land pending an appeal, *the owners, or parties entitled thereto, shall be entitled to receive the money paid into court on account of the award appealed from,* without prejudice to the appeal taken; but if the corporation shall have appealed, such money shall only be so withdrawn upon filing *a bond in such sum and with such surety as shall be approved by the court or judge, to repay the amount by which such award shall be abated on such appeal, with costs.* . . . If any defect of title to or incumbrance upon any parcel of the premises shall

be suggested in said petition, *or if any party to said proceeding, or any person not a party, shall petition the said court, setting up a claim adverse to the title set out in said petition, to said premises, and to the money or any part of it, to be paid as compensation for the property so taken, the court shall hear and determine the rights of the parties to said money, and, for that purpose, may order a reference or an issue to be tried by a jury.*"

The provisions of the statute above quoted are all that seem to have any bearing on the questions of how compensation and damages shall be awarded by the commissioners, and how appeals shall be taken from these awards. It will be seen by an examination of the statutes that there are but two places where there is any reference made to separate estates in the lands taken. In the first place, in sec. 1848, the commissioners are required "to appraise, ascertain, and determine the value of the tract proposed to be taken, with the improvements thereon, and of each separate estate therein." And again, in said section, it requires the commissioners to make a separate report in relation to the lands of each distinct owner, setting forth the award for each tract *thereof or separate estate therein.* Under this last provision, which requires a separate report in relation to the lands of each distinct owner, this court held, in the case of *Rusch v. M., L. S. & W. Railway Co.,* 54 Wis., 136, that a condemnation of six lots together, and an award of a gross sum as damages for taking separate parts of six lots, was irregular and void, it appearing on the trial that at the time of the award the several lots were owned separately by different persons. The difficulty in that case was that there was not a separate report in relation to the lands of each distinct owner, nor was there any award made for each tract of land taken. There was no question in that case of the right of each owner of a separate estate in a single tract of land to have an award of damages as to such separate estate,

and of the necessity of each owner of such separate estate taking a separate appeal from the award of damages made for the entire tract, nor of the necessity of the railroad company taking such separate appeal.

In a case like the one at bar, where a single parcel of land, a part of which is required for the use of the railroad, is owned by tenants in common, there is not only no necessity of making a separate award of damages to each tenant in common, but there seems to us to be an impropriety in so doing. They are together the owners of the whole tract, and when the compensation is fixed for the whole tract, it is fixed for the benefit of such owners, and it is a mere matter of arithmetic how much each tenant in common is entitled to. If their interests be known and admitted, there is no uncertainty as to their rights in the money awarded, and the formality of separating it into parcels by the commissioners neither adds to nor detracts from their rights, nor to the certainty of such rights. The money belongs to them in the proportions that their interest in the land bears to the whole interest. If the statute should be construed so as to make it necessary that the commissioners should, in form, after awarding compensation for the whole tract, divide such compensation among the tenants in common according as their interests were made to appear to the commissioners, there would be no propriety in either requiring the railroad company to take separate appeals from each separate award, nor in permitting each of said tenants in common to appeal separately from the award made to them separately. Such practice under the act would tend only to increase litigation and the costs thereof, without any corresponding good resulting therefrom. Under such a system of practice we might have as many different awards of damage upon the trial of the appeals as there were different tenants in common, although all might have the same interest in the whole tract. If the several tenants in common may have separate

juries to assess separate and different damages upon an appeal, why might not the commissioners award different amounts of compensation to the owners having the same interests?

The section which gives the appeal does not contemplate any such absurdity. It simply says *any party may appeal from any award made.* This must be construed to mean that any party may appeal from any award made which affects his interest in the property taken by the railroad company. A tenant in common is interested in the amount awarded as compensation for the entire tract of which he owns a known undivided interest. He is not aggrieved by the fact that after the commissioners have made an award as to the gross damage to the whole tract they have divided that amount by three or four, or any other figure which represents his part or interest in the land; nor, on the other hand, is the railroad company prejudiced or aggrieved because, after requiring it to pay a gross amount in damages for taking a parcel of an entire tract of land, the commissioners divide it by the number which represents the number of the tenants in common, and award that each is entitled to such part of the damages as the result of the division indicates. The statute says that when the appeal is taken, the appeal shall be considered an action pending in court, and that *the owner or owners of the land for which such award was made, and who are parties to the appeal,* shall be plaintiffs in such action. The railroad company appealed from the award which affected its interest, and while it in form also appealed from the separate awards to the several tenants in common, such appeal was but stating their appeal in a different form; the substance of it was the same; and we think it would have been good had it appealed from the award in gross alone, as that was the matter in which it was interested, and in nothing else. It could make no difference with the company whether the amount of damages was distrib-

uted to one person owning the entire estate, or to four persons owning the entire estate. As there is nothing in the statute which expressly requires the company to appeal from the award made to each of the tenants in common, we hold that it is not required by its spirit, or by any reasonable construction thereof.

It was urged, on the part of the learned counsel for the appellants, that, under this construction, if one or more of the tenants in common refused to appeal when the other tenants were aggrieved by the award of the commissioners, they would be powerless to have the action of the commissioners reviewed. We do not apprehend that any such difficulty could arise. If any one or more of the tenants in common refused to appeal at the request of another, and decided to accept his share of what was awarded to him, he might do so, and the appeal would then relate only to such interest in the land as remained, and as to the interest or estate of the party accepting the amount awarded it would vest in the company, and not be in controversy. The action would, so far as the trial of the appeal was concerned, be the same as though the company had settled amicably with one or more of the tenants in common, and then proceeded to condemn the undivided interests of the other tenants. But, however this may be, we are very clear that the railroad company must appeal from the gross award of damages, and that upon such appeal all the tenants in common and all the other parties in interest are plaintiffs. This construction of the statute brings the proceeding in these cases in harmony with the practice under the code as to the proper parties to be joined in an action, and does not conflict with any express provision of the statute prescribing the practice in such proceedings. It is also in harmony with the decisions of this and other courts, under similar statutes. *Neff v. C. & N. W. Railway Co.*, 14 Wis., 370; *Black v. C. & N. W. Railway Co.*, 18 Wis., 208; *Kohl v. U. S.*, 91 U. S., 367;

*Tucker v. Campbell*, 36 Me., 346; *Merrill v. Berkshire*, 11 Pick., 274; *Giesy v. C., W. & Z. Railroad Co.*, 4 Ohio St., 308; *Mitcher v. Benton*, 48 N. H., 157; Mills on Em. Dom., §§ 262, 263; Pierce on Railroads, 183, 184; *G. R., N. & L. S. Railroad Co. v. Alley*, 34 Mich., 16; *E. S. & St. C. Railroad Co. v. Benham*, 28 Mich., 459.

It is true that the cases above cited are not under statutes in all respects like those of this state, under which these proceedings were had, but they all tend to show the propriety of the proceedings taken in this case, and that they ought to be sustained unless our statute by some clear provisions requires a different procedure. We are unable to find any such clear requirement; and we hold that the appeal of the railroad company was properly taken, and that the several tenants in common were not entitled to separate trials upon such appeal.

The learned counsel for the appellants assign as error the rendering of a judgment against *Thomas G. Watson*, as administrator, for the amount by which the award was abated on the trial in the circuit court. The record shows that the money paid into court by the company, upon the award made by the commissioners, was withdrawn from the court by said *Watson*, as administrator of the estate of White, with the assent of the tenants in common of the estate, and it must be presumed that the money so received by the administrator was received and used for the benefit of said estate. The record also shows that the administrator gave the bond required to be given by sec. 1850, R. S. He having withdrawn the money under the statute above cited, and given the bond required, should be estopped from denying that he was a party to the proceeding and entitled to such money; and as we hold he was a party to this appeal, there was no error in rendering a judgment against him for the amount by which the award was abated by the verdict of the jury in the circuit court. The court allowed the company interest

on the money which it was entitled to recover from the time the administrator received the same to the date of the judgment. Having had the use of the money of the company, to which they were not entitled, it would seem to be clearly equitable to charge the appellants with interest on the same for the time they so used it.

Applying the rule that all the courts have, as to the payment of interest on the money awarded to the owner for his damages, where the same are increased upon the appeal of the land-owner, the company was entitled to the interest allowed it in this case. The value of the lands taken and the damages sustained by the taking are assessed as of the date of the taking of the same by the company, and interest is always allowed upon the sum so fixed from the date of the taking to the rendition of the verdict; and the fact that the company has paid the money into court awarded by the commissioners, does not affect the question of interest unless the owner has withdrawn the same from the court. If the company must pay, by way of damages, interest on the unascertained amount of damages the land-owner is entitled to, from the time it takes possession of the land, there would seem to be a like obligation on the part of the owner to pay interest on that part the damages received by him, and which the law requires him to refund to the company. Pierce on Railroads, 220; *West v. M., L. S. & W. Railway Co.*, 56 Wis., 318.

Several exceptions were taken by the appellants on the trial in the circuit court to the admission of evidence on the part of the company, as well as to the rejection of evidence offered by the appellants. One of these objections relates to the questions put to a witness of the appellants, who had been examined at considerable length for the purpose of showing that a part of the appellants' land was suitable to be laid out and platted into village lots, and as to the probable value of such lots when so laid out and platted.

On the cross examination he was asked several questions in regard to sales of lots made in the vicinity of this land previously, some of the sales having been made four or five years before the taking of the land by the railroad company. We think this kind of evidence was competent, and especially on cross examination, to test the worth of his opinion as to the value of the lots proposed to be platted on the lands in question. The prices for which lots similarly situated had in fact been sold would be some evidence tending to show the probable value of the lots to be sold in the future. Evidence of this character, to test the value of the opinion of a witness who testifies as to the future value of land to be thereafter platted and sold in the shape of village lots, is clearly admissible. Recent sales would be the best test, but the limits within which evidence of sales may be shown is very much in the discretion of the trial judge; and this court will not find that such judge has abused his discretion upon a question of this nature unless the abuse is clearly shown. *Chandler v. Jamaica*, 122 Mass., 305; *Shattuck v. S. B. Railroad Co.*, 6 Allen, 115; *Green v. Fall River*, 113 Mass., 262; *Gardner v. Brookline*, 127 Mass., 358; *Presbrey v. O. C. & N. Railway Co.*, 103 Mass., 1. These cases recognize not only the propriety of this kind of evidence on the cross examination of a witness who has given his opinion as to the value of the property in question, but as evidence in chief to disprove the correctness of the opinion of a witness who has given an opinion of the value of lands in dispute. See *Benham v. Dunbar*, 103 Mass., 365. In this case, evidence of sales made in the vicinity of the lands in controversy from one to eight years before, was held admissible. *Paine v. Boston*, 4 Allen, 168; *B. & W. Railroad Co. v. O. C. & F. R. Railroad Co.*, 3 Allen, 142; *Davis v. C. R. B. Railroad Co.*, 11 Cush., 508. We do not think there was any error in permitting the cross examination of the witness in the manner set out in the bill of exceptions.

An exception was taken to the ruling of the circuit judge in refusing to permit the witness Babcock to give his opinion as to the probable cost of opening streets through the land in question, so as to make it available as village lots. The evidence showed that the land was so situated that, in order to lay it out into village lots with a proper street, it would be necessary to open the street through the lands of other parties. We think the question of the probable expense of opening such a street was not a proper subject for the opinion of the witness. If such cost was an element which entered into the calculation of the value of the lands laid out into lots, it was a question for the jury, having all the facts before them, and not to be proved by the opinion of the witness.

It is insisted the court erred in not striking out the answer of the witness Babcock to the following question: "Don't you know that the White estate offered that property for sale, before the railroad went through there, for $12,000?" *Answer.* "I understood they had, but it don't make any difference in the worth of it." This witness had been testifying for the appellants as to the value of the land before and after the railroad went through. The question was put on cross examination. There is no question as to the propriety of the question put, but it is said the answer clearly shows that the witness had no personal knowledge of the supposed offer to sell by the estate, and his answer was mere hearsay. It does not clearly appear from the answer that the witness did not get his understanding of the matter from the parties owning the estate. Even if it was clear that the witness meant that he had heard from some person other than the owners of the estate that such an offer had been made, we should feel great reluctance in reversing the judgment on that account. The offer on the part of the appellants to show that the former owner of the land had received an offer for it of $17,000, which he refused, was, we think,

properly rejected. *St. J. & D. C. Railroad Co. v. Orr*, 8 Kan., 419; *Davis v. C. R. B. Railroad Co.*, 11 Cush., 506, 509.

It is alleged that it was error to permit the company to prove on the trial that the appellants in fact sold the land in question before the trial of the action, but after the railroad was located across it, and the price for which the same was sold. This evidence was introduced for the purpose of showing that the land was in fact of greater value after the road was located across it, than the value placed upon it by the appellants' witnesses. We think the evidence was competent, not only as tending to prove its real value after the railroad was located across it, but as an admission on the part of the appellants of such value. *Whitman v. B. & M. Railroad Co.*, 7 Allen, 313–318; *Shattuck v. S. B. Railroad Co.*, 6 Allen, 117.

The learned counsel for the appellants insist that the court erred in refusing to give certain instructions to the jury as requested by the appellants. Taking it for granted that it was competent for the appellants to enhance the damages by showing that a part of the tract of land was more valuable for the purpose of being platted into village lots and sold as such than for any other purpose; and that the evidence given on their part tended to prove that fact; and that the instructions requested by appellants fairly submitted that question to the jury,— we are still of the opinion that such question was fairly submitted to the jury in the general charge of the circuit judge, and that the appellants have nothing to complain of in that respect. It was not the duty of the court to give particular prominence to that theory of the appellants' case, in instructing the jury, that the counsel does in his argument of the case before the jury. It is for the court to instruct the jury upon all the questions fairly in the case, but it is not error to refuse to emphasize any particular phase of the case in favor of either party. The court

Watson and others vs. The Milwaukee & Madison R'y Co.

did not ignore the appellants' theory in regard to the matters the jury might consider in arriving at the amount of damages to which they were entitled.   The parts of the general charge to which exceptions are taken are as follows:

" In estimating such value and the damages the rule of law is that the owner is only entitled to the difference between the fair market value of the land before it was taken, and the fair market value of what remained after the taking of the part by the railway.   In determining the value of the land actually taken you are to be governed by the fair market value in December, 1880.   What was the fair market value of the land at that time for any purposes for which it might reasonably be used in the immediate future? Not, what would lots sell for in the distant future if a street were opened and lots offered for sale; nor, indeed, is the price per lot a measure of value either in the near or in the distant future.   That would be too remote and uncertain,— speculative; but what was the land worth then in the market, on the 16th day of December, 1880, with reference to its availability for any purpose to which it might be reasonably put by a provident, discreet business man in the immediate future.   And so, in fixing the amount of damages for the land not taken, you are to exclude remote, possible, speculative injuries, and to include only such direct, actual injuries as result from the construction and running of the road by the defendant railway company.

" And the testimony which has been admitted as to the smoke from passing engines, noise of the bells and whistles, and other annoyances from the proximity of the road and its use by the railroad company, was received, not as furnishing a basis on which the jury should assess distinct damages for the inconvenience and annoyance, but to account, in some measure, for the valuation stated by the witnesses, to enable the jury to estimate the value of the opinions of the witnesses as to the depreciation in value of the property, and.

to determine from the testimony how much the property is diminished in value by exposure to those remote injuries, and to aid you in measuring the actual or real loss to the owners by the building of the road across this property. . . . The evidence given in this case, of the sale of the property in question at a price greatly in excess of the price placed on it by any of the witnesses, is competent evidence, as affecting the value of the premises. It is not conclusive, but is entitled to great weight, and is to be considered and weighed by you, with the other testimony in the case.

"In estimating such value and damages, you are instructed that the rule of law is that the owner is only entitled to the difference between the fair market value of the whole property, before the taking by the company, and the fair market value of what remained after the taking."

The instructions requested by the appellants, and which were refused, read as follows:

"1. On the 16th day of December, 1880, the railway company took for its road the following described lands of the plaintiffs, to wit: A piece 50 feet wide by 277½ feet long, through the Park House lot, and a piece off from the south end of the brick house lot 99 feet in length and 9 feet wide on the west end, and 19 feet wide on the east end.

"The jury will first find the fair market value of the land taken before the railroad company took it as aforesaid; and if the jury find the south 350 feet of the Park House lot, and the south 150 feet of the brick house lot, in December, 1880, before the railroad company took any part thereof for its road, more valuable to be used in the immediate future for village lots than they were to be used as they had been previously, then they may take into account the value of such pieces to be used for village lots, in ascertaining the fair market value of the land taken by the railway company for its road.

"2. The jury will then find the depreciation in the market value of the residue of the lands known as the Park House

lot and the brick house lot, by reason of the taking of the land for the railway as aforesaid in the first instruction mentioned, without making any deduction therefrom for benefits, if any such there were, which the plaintiffs enjoy in common with their neighbors, as from a general increase of the value of lands in that neighborhood, if such there was, by reason of the building of the railroad.

 " And in ascertaining the depreciation, if you find the south 350 feet of the Park House lot, and the south 150 feet of the brick house lot, in December, 1880, before the railway company took for its road any part thereof, more valuable to be used in the then immediate future for village lots than as it had been previously used, you will estimate the depreciation of the residue of said south 350 feet, and said south 150 feet, by reason of said railway company taking a part thereof for its road, on the principle of the depreciation being the difference between the market value of such residue for village lots before the railway ran its road through the land, and what, after the road was constructed or built, it was worth for any purpose or use."  .

It will be seen that the only reason why the appellants complain of the refusal to give the instructions asked, and of the instructions given, is that the court declined to present the theory of the special use to which a part of the premises might be put in the future, in a specific and prominent manner to the jury. This, as we have said above, the learned circuit judge was not bound to do. The evidence of the probabilities of any part of the lands taken being more valuable for the use relied upon by the appellants were so remote, and depended so much upon matters resting in the volition of persons over whom the appellants had no control, we think the court did its entire duty when it permitted the appellants to present their theory of the evidence, and argue it by counsel to the jury, without making it a matter of special comment in his charge. All the court was required to do in the matter was to state to the jury that in estimat-

ing the damages this theory of the case might be considered by them, and this was sufficiently done when he said to them: "In estimating such value and damages, the rule of law is that the owner is only entitled to the difference between the fair market value of the land before it was taken, and the fair market value of what remained after the taking of the part by the railway. In determining the value of the land actually taken, you are to be governed by the fair market value in December, 1880. What was the fair market value of the land at that time *for any purpose* for which it might reasonably be used in the immediate future? Not what would lots sell for in the distant future if a street were opened and lots offered for sale; nor, indeed, is the price per lot a measure of value, either in the near or the distant future."

This instruction presents the proper rule for estimating the damages. They were plainly told that in estimating the market value of the land at the time it was taken, they were not confined in determining that value by a consideration only of the use to which the owner was then putting it, but that they might consider any reasonable use to which it could be put in the immediate future by a provident and discreet man. Under this instruction the jury could not have been misled as to their right to consider the theory of the damages pressed upon them by the appellants in their evidence and arguments. That question was not withdrawn from their consideration. They were, in effect, told that if the evidence satisfied them that the land was valuable for immediate use in the future as village lots, then they should consider that fact in estimating the damages, and if it did not, then they need not consider it.

We think the court very properly refused to submit to the jury the following question, proposed by the appellants: "On the 15th day of December, 1880, before the railroad company took any part of the land for its road, were the south 350 feet of the land known as the Park House prop-

erty, and the south 150 feet of land known as the brick house lot, more valuable to be laid out in village lots than to be used as said lands had previously been used?"

The questions submitted by the court were sufficient for a special verdict, and when passed upon by the jury disposed of the whole case, and there was no necessity or propriety in submitting other questions which had only a bearing on the question of the amount of damages the appellants were entitled to. If the question propounded by the appellants should have been submitted, then upon the request of either party the jury might be called upon to find as a special verdict upon every matter which might have a tendency to enhance or depreciate the damages of the appellants. Such a practice has been frequently disapproved by this court. *Ward v. Busack*, 46 Wis., 407–411; *Blesch v. C. & N. W. Railway Co.*, 48 Wis., 168–196, 197.

We think the court was justified in saying that the fact that the lands sold for a particular sum shortly after the railroad was laid across the same, was entitled to great weight in getting at the value of the land immediately after the road was laid across the same, when considered in connection with evidence of the mere opinion of the witnesses on both sides of the case. It is the constant experience of all courts that the subject of the value of real estate is a most difficult thing to ascertain from the mere opinion of men claiming to have knowledge of the subject. The evidence of the witnesses in this case is an illustration of the great uncertainty of such testimony, and it may well be said that an actual sale of the property in question very near to the time at which the value is to be fixed, is of great weight as contrasted with evidence of mere opinion.

We find no errors in the record which call for reversal of the judgment of the court below.

*By the Court.*— The judgment of the circuit court is affirmed.