## CITY OF SPRINGFIELD
## v.
## BENJAMIN M. GRIFFITH.

*Municipal Corporations—Change of Street Grade—Damage to Lot—*
Damnum Absque Injuria—*Variance between Declaration and Proof.*

1. In an action to recover damages alleged to have resulted from the raising of the street grade in front of plaintiff's lot, it is *held:* That the expense of filling up the lot to make it conform to the new street level can not be recovered as damages; that there can be no recovery for obstructing the flow of surface water from said lot, because damages therefor were not claimed in the declaration; and that there should have been no allowance for the appearance merely of the plaintiff's house, unless caused by the elevation of the street as distinguished from the filling up of the lot.

2. It *seems* that in such cases there can be no recovery for depreciation by effect upon appearance merely because of changes wholly external to the premises.

[Opinion filed May 25, 1886.]

APPEAL from the Circuit Court of Sangamon County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. GREENE, BURNETT & HUMPHREY and JOSEPH M. GROUT, for appellant.

A city may lower or elevate the grades of its streets at its pleasure, when it is done in good faith, with a view to fit them for use as streets, to meet the public wants, and can not be made liable for the inconvenience and expenses of adjusting the adjacent property to the grade of the street as improved. Nevins v. Peoria, 41 Ill. 502; Shawneetown v. Mason, 82 Ill. 337; Rigney v. Chicago, 102 Ill. 64, reviewing authorities. The presumption is that those who purchase lots upon streets calculate the chances of such elevating or lowering of the grade of the streets as the increase of population of the city may require, in order to make the passage to or from the several parts safe and convenient; and as their purchases are always voluntary, they may indemnify themselves in the price

of the lots which they buy, or take the chance of future improvements, as they shall see fit. Shawneetown v. Mason, 82 Ill. 337; Callender v. Marsh, 1 Pickering, 418.

Messrs. PATTON & HAMILTON, for appellee.

PLEASANTS, J. Case by appellee, for damages to his residence property on Sixth Street, in the City of Springfield, alleged to have been caused by raising the grade of said street in front of it.

The ways and particulars in which it is claimed to have been thereby done, are set forth in several counts, respectively as follows:

1. By destroying the easy and inviting access to and from said street and the plaintiff's premises.

2. By putting him to expense for raising his lots to make them conform to the grades of said street so raised.

3. By putting him to expense for raising his lots to protect them from the overflow of water accumulating on said street so raised.

4. Same in substance as the third.

5. By causing the water accumulating on said street to flow upon said premises and into the dwelling house and cellar thereof.

6. Generally, that defendant wrongfully raised the grade of said street and thereby damaged and depreciated the value of said lots.

Appellee's lot is on the east side of the street, fronting west, and sixty-five feet in width. His house, which is a story and a half high, and of brick, is eight or ten feet from the south line and fifteen from the north, and the porch is fourteen from the front fence. It was built on a ridge higher than the street and running diagonally southeast and northwest, the summit of which at the north line was ten or twelve feet from said fence and at the south about thirty-two; so that surface water falling on the lot west of the line between these points formerly flowed west over the sidewalk into the street. This flow was arrested at the sidewalk by the raising of the

City of Springfield v. Griffith.

grade about eleven inches; and to prevent the consequent formation of a pond in his front yard and the flooding of his cellar he says he was compelled to fill up his lot on the front. He did fill it on the north part up to the surface of the raised sidewalk, which gave a fall of two and a half inches from the house to the street, but not so high on the south part, from which he carried the water by tile laid from his southwest corner back to a sewer in the alley.

This work, including the taking up and relaying of stone and brick walks, cost him $280. But this was only a choice of evils, for the filling itself necessarily lessened the value of the property in various ways, nearly stopping his ventilating windows, dampening the floor and walls, injuring the plaster, paper and paint, etc. The most serious effect, according to the evidence, is from the change of elevation. The porch, which was before fourteen inches above ground, is now only four or five, and the general appearance is squatty and unwholesome. He thinks the depreciation is from $2,500 to $3,000. Other witnesses corroborate him as to the particular facts, and substantially as to his estimate of the damages, the lowest being not less than $1,000, the amount found by the verdict, on which the court, after overruling a motion for a new trial, rendered judgment.

From the foregoing statement, which is in substance that of appellee himself, it appears that all his damage is in the cost of filling and tiling his lot, and the effect of it upon the market value of the premises.

Did the effect of the city's action as averred compel or justify this filling, so as to make it legally liable for all this damage?

It can not be claimed, upon the evidence, that the access to and from the street, as is averred in the first count of the declaration, or the easy and inviting character of it, as may have been intended, was destroyed by the raising of the street grade to the height of eleven inches. Its impairment was hardly sufficient to be of itself a cause of action; certainly not to compel or justify the filling of the lot as a remedy; nor was restoration of the lost conformity to grade as

averred in the second count, for such conformity for its own sake, which is all that is here averred, is purely a matter of taste and choice. This count therefore states only a voluntary expenditure for the gratification of fancy, which is not a cause of action.

The real, if not the sole cause, is stated in the third, fourth, and fifth counts, which are substantially the same, namely: that the direct and necessary effect of raising the street grade was to cause the water, accumulating on the street, to flow as it had not been used to flow, to and upon the plaintiff's premises, and that to protect them from such overflow he was compelled to fill and raise them as he did.

But this statement is not shown to be true, and is shown to be not true. Upon this point there is no conflict of evidence. The street-curbing contained all the water that accumulated on the street, and the sidewalk sloped from appellee's fence to the curb. The water that troubled him was what fell wholly on his own premises. His case against the city, therefore, if any he has, is for obstructing and preventing its flow therefrom, by raising the street grade and neglecting to provide suitable culverts. But such is not the case stated, nor the damage claimed by the declaration. He was entitled to recover only for what was both claimed and proved. The first instruction for plaintiff allowed the jury too great latitude in this respect. We apprehend they awarded upon this evidence all they would have awarded upon proof that the filling was necessary to keep off the water from the street.

Nor are we satisfied with the allowance of damages for any effect upon the appearance, merely, of appellee's building, except such as was caused by some change in the premises. How much was allowed for squattiness, and how far that was due to the elevation of the street, apart from or in addition to the filling of the lot, is entirely uncertain; yet from the evidence it may be fairly presumed that some of this effect was so caused, and that this element of damage entered into the finding. Thus, the witness Knickerbocker was asked, "What difference, if any, in the appearance of the house, was made by the change in filling up the steeet?" to which objection was

made, but overruled, and he answered: · " It looks squatty and low; lower even than the street. Anybody, to look at it, would naturally think the first floor was about even with the sidewalk. Before, it had a very good appearance—set up so." He further said, " I would not consider the house of any value after the grade was raised;" and Mr. Cullom says, " It lowered the house by comparison with the street." The depreciation by effect, upon appearance merely, of changes wholly external to the premises, must be to a large extent matter of taste and fancy; but if it could be shown by reliable testimony, we think it would be *damnum absque injuria,* and this evidence was improperly admitted. Individuals owning adjoining lots would not be so restricted in respect to their improvement, and we see no reason why the city should be in respect to its streets.

On the whole, we are satisfied this verdict, as to a large portion of the damages found, is unsupported by competent evidence, and that the court erred in the particulars mentioned which contributed to the result. The judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*