# CITY OF SPRINGFIELD
## v.
# B. M. GRIFFITH.

*Municipal Corporations—Change of Street Grade—Action against City for Damages by Adjacent Property.Owner—Measure of Damages —Instructions.*

1. In an action against a city to recover damages to plaintiff's real estate occasioned by a change of grade in the street on which it was located, *held*, that an instruction given by the court on the measure of damages was without support from the evidence, and was misleading to the jury, constituting reversible error.

2. Where private property has been damaged, but not taken, by a public improvement, the measure of damages is the depreciation in value occasioned by such improvement. Where there has been a necessary outlay for the purpose of immediate use and enjoyment of the property, such outlay is to be taken into account in estimating the depreciation.

. [Opinion filed May 20, 1892.]

APPEAL from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Messrs. T. McGRATH, DAVIS McKEOWN and CONKLING & GROUT, for appellant.

Messrs. PATTON & HAMILTON, for appellee.

MR. JUSTICE WALL. This case was here at a former term. See 21 Ill. App. 93. A second trial resulted in a verdict and judgment for $1,250. The case is substantially as it was before and a restatement is not necessary.

It is apparent that the main if not the sole ground of damage was that the raising of the street prevented the flow of water from the lot and that thereby the owner was compelled to drain or fill in order to enjoy the full use of the property. He did some filling and he did some draining,

and he complains that the property was damaged in its appearance, in that so far as the filling extended there was an increased tendency to dampness, making it undesirable and unwholesome as a residence. The filling was not very considerable, and it is difficult to see how the estimate of plaintiff in this respect can be sustained. Testimony was allowed to go to the jury to show what it would cost to fill the lot up to the grade of the street and to raise the house to correspond, and the estimates of witnesses upon this theory of the plaintiff's damages ranged from $1,500 to $3,000. The plaintiff himself testified that the cost of filling, draining and raising walks was $280, and that in his opinion the property was not as good by $3,000, as if grade had been let alone and said, "I answer the question of depreciation in value by estimating it at what it would cost me to put it in condition it was before lot had to be filled in, and that would be $3,000; and it is unsanitary with the filling. At the time of storm water went under front part of house; there is no cellar there; the ground is two feet lower than outside." The storm referred to occurred while the street was being graded. After the grading was completed no water passed from the street or the sidewalk upon the plaintiff's lot and all the water he was troubled with was what fell upon the lot.

The court gave the following instruction, at the instance of the plaintiff:

"2. The court instructs the jury, that if you believe from the evidence that the city, through its officers and agents, filled up Sixth street in front of the premises of Dr. Griffith, so as to thereby throw water upon said premises which otherwise would not have run onto said premises, and if you further believe from the evidence that it thereby became necessary to fill up said premises and put tile therein, and that Dr. Griffith caused such filling and tiling to be done in the usual and customary way in such cases, then Dr. Griffith has a right to recover in this case whatever sum of money such filling and tiling reasonably cost him; and if you further believe from the evidence that said filling and

tiling did not wholly prevent such flowing of water upon said premises, and that said premises continued thereafter to be damaged by such flowing of water thereon, then the jury should, in addition to whatever sum of money said filling and tiling reasonably cost Dr. Griffith, give him in their verdict whatever sum said premises have been damaged, if any, by the flowing of said water thereon as aforesaid, since said filling and tiling."

This assumes a state of facts not shown by the proof as to water flowing upon the lot from the street. Filling was not necessary to prevent such flowing, nor was he annoyed with such flowing after the filling was done. As already stated he had no annoyance from that cause after the street was completed.

The question then arises, what would be the measure of damages in such a case? It is not disputed that it was necessary for him to resort to some means of relief from the water naturally falling upon the lot, which before the improvement flowed away from the lot to the street. We understand the rule as laid down by the Supreme Court to be that where private property has been damaged, but not taken, by a public improvement, the measure of damages is the depreciation in value occasioned by the improvement. If the fair market value of the property is as much immediately after the improvement as before, then no damage has been sustained. The question then is, how much the market value has been diminished by such improvement; and where there has been a necessary outlay for the purpose of immediate use and enjoyment, such as to drain the water obstructed by the change of grade, then that item should be taken into account in estimating the depreciation. Immediately after the grade was changed and before the expense for drainage was incurred, the diminution in market value, if any, would of course be more than after the drainage. So, therefore, if the owner incurs such necessary expense in order that he may reasonably enjoy his property, he may ask reimbursement of the same in addition to the loss of market value still remaining; but we do not understand

City of Springfield v. Griffith.

that he may recover the amount necessary to raise the grade of his lot and to elevate the house also, as was the theory upon which the plaintiff and several of his witnesses based their estimates, and upon which the verdict no doubt was predicated. Reference may be had to the following among other cases where the Supreme Court have announced the rule stated : C. & P. R. R. Co. v. Francis, 70 Ill. 238; Page v. C., M. & St. P. Ry. Co. 70 Ill. 324; City of Shawneetown v. Mason, 82 Ill. 336; City of Elgin v. Eaton, 83 Ill. 535; C., M. & St. P. R. R. Co. v. Hall, 90 Ill. 42; Springer v. City of Chicago, 135 Ill. 552; Stockton v. City of Chicago, 136 Ill. 434; City of Bloomington v. Pollock, unreported.

Where property is so circumstanced that it has no market value, or that the difference in market value can not be ascertained, the proof should show an injury substantially affecting its use, as by rendering it inaccessible, uncomfortable or unhealthy; but where there is a market value such an injury would of course be taken into account in estimating the depreciation. In this instance if any injury arose by reason of dampness it was manifestly due to raising the grade of the lot which, according to the proof, was hardly necessary to get rid of the water. Drainage was feasible, as we infer from the weight of the testimony.

We are of opinion it was error to give the second instruction above quoted, because it assumes a state of facts not in proof, and that the damages awarded are substantially excessive in view of the evidence and the rule properly applicable thereto in respect to the measure of damages. It is apparent the verdict is based, not upon depreciation in market value, but upon estimates as to the cost of raising the lot and house to grade.

The judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*