WARREN SPRINGER

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa January 22, 1891.*

552:26 LRA 778

1. STREET IMPROVEMENT—PRIVATE DAMAGE—*measure of damages—elements to be considered—value of property—evidence, etc.* In an action against a city to recover damages alleged to have resulted from the construction by the city of a public improvement in a street upon which the plaintiff's property abutted, if it appear that no part of the plaintiff's land has been taken, but merely damaged, by the public improvement, a recovery can not be had unless the property claimed to be damaged has been depreciated in value by the construction of the improvement. If the fair market value of the property is as much immediately after the construction of the improvement as it was before the improvement was made, no recovery can be had.

2. In order to determine whether a party has been damaged by the construction of a bridge, viaduct and approaches in a street in front of his property, it is proper to show the value of the property before and after the improvement, as well as at the time the improvement was made.

3.  Evidence of the value of the lot at the time of the trial is competent, as having a bearing on the value of the property some sixteen months before the time of the completion of the improvement.

4.  Evidence of the value before and after the time when the damages are alleged to have been sustained is admissible, and the time within which such evidence shall be confined is a matter in the sound discretion of the trial court.

5.  SAME—*proof of value by offer to sell.*   While an offer of the owner of property to sell at a certain price is not conclusive evidence of its value, yet such offer is competent evidence against him as an admission in fixing the value at or near the time the offer was made.

6.  *It is competent to prove the admissions and declarations* of the owner of property sought to be condemned for public use, as to its value, and the price at which he has offered to sell it, which are pertinent to the issue.  If the owner has given an option for the purchase of the property, this is competent evidence against him as to the value of the property at or about the time it was given.

7.  SAME—*change of street grade—benefits and damages—both to be considered.*   In an action by a lot owner against a city, to recover damages for injury from a public improvement in an adjoining street requiring a change of the grade of the street, there is no error in submitting to the jury the question whether or not the plaintiff's property is damaged by the "improvement, taken as a whole."

8.  Where the plaintiff claims that he is damaged by an improvement in a street adjoining his property, it will be the duty of the jury, in passing upon the question, to take into consideration the whole improvement, as a part standing alone may be productive of damage to his property, while as a whole it may prove a benefit thereto.

9.  So if the plaintiff's property is benefited as much as it is damaged by the construction of a viaduct and approaches in the street, taken as a whole, he can not recover damages.

10.  SAME—*right to have the jury view the property.*   In an action by a lot owner against a city for an alleged damage to his lot by a change in the grade of the street, the court has the power and the right to allow the jury, in charge of an officer, to go upon and view the premises, although the trial may be after the completion of the improvement complained of.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

Briefs of Counsel.

Messrs. KNIGHT & BROWN, and Mr. E. H. GARY, for the appellant:

It was error to permit the jury to inspect the premises. *Doud* v. *Guthrie,* 13 Bradw. 656.

The option given by Springer to Hurlbut was improperly admitted in evidence. Pierce on Railroads, (2d ed.) 225; Mills on Eminent Domain, 170; Lewis on Eminent Domain, secs. 446, 447; *Fowler* v. *Commissioners,* 6 Allen, 92; *Dickinson* v. *Fitchburg,* 13 Gray, 546; *Davis* v. *Railway Co.* 11 Cush. 506; *Chapin* v. *Railway Co.* 6 id. 422; *Upton* v. *Railroad Co.* 8 id. 600; *Tyrrell* v. *Railway Co.* 111 Mass. 546; *Drury* v. *Railway Co.* 127 id. 571; *Pose* v. *Taunton,* 119 id. 100; *Presbrey* v. *Railroad Co.* 103 id. 1; *Print Works* v. *Fall River,* 110 id. 428; *Cobb* v. *Boston,* 112 id. 181; *Watson* v. *Railway Co.* 57 Wis. 332; *Lehmicke* v. *Railway Co.* 19 Minn. 464; *Railroad Co.* v. *Ryan,* 64 Miss. 399; *Railroad Co.* v. *Pearson,* 35 Cal. 247; *Railroad Co.* v. *Orr,* 8 Kan. 419; *Railway Co.* v. *McLaren,* 47 Ga. 546; *Springfield* v. *Schmoock,* 68 Mo. 304.

As to benefits and damages, and what are special damages, see *Railroad Co.* v. *Henry,* 79 Ill. 290; *Railroad Co.* v. *Kirby,* 104 id. 347; *Hyde Park* v. *Ice Co.* 117 id. 233; *Railroad Co.* v. *Blake,* 116 id. 163; *Washburn* v. *Railroad Co.* 59 Wis. 375; *Roberts* v. *Commissioners,* 21 Kan. 247; *McReynolds* v. *Railroad Co.* 106 Ill. 158; Lewis on Eminent Domain, 476-503.

Mr. JONAS HUTCHINSON, Mr. CLARENCE S. DARROW, Mr. BYRON BOYDEN, and Mr. H. H. MARTIN, for the appellee:

An offer of the owner to sell property at a certain price, or an actual sale by him, is competent evidence against him as an admission in determining its value at or about the time of the offer or sale. Lewis on Eminent Domain, secs. 439, 446; Mills on Eminent Domain, (2d ed.) sec. 172; 6 Am. and Eng. Encyclopedia of Law, 619, 620; *Railroad Co.* v. *Greely,* 23 N. H. 237; *Springfield* v. *Schmoock,* 68 Mo. 394; *Watson* v.

*Railway Co.* 57 Wis. 332; *Fogg* v. *Hill,* 21 Me. 529; *Whitman* v. *Railroad Co.* 7 Allen, 313; *Shattuck* v. *Railroad Co.* 6 id. 117; *Railroad Co.* v. *Butts,* 40 Kan. 159; *Patch* v. *Boston,* 146 Mass. 52; *Railway Co.* v. *Andrews,* 37 Kan. 471; 1 Rorer on Railroads, 225.

In the following cases it was merely held that the land owner could not introduce evidence of offers made for his land, or of offers of other persons for land in the vicinity: *Fowler* v. *Commissioners,* 6 Allen, 92; *Dickinson* v. *Fitchburg,* 13 Gray, 546; *Davis* v. *Railroad Co.* 11 Cush. 506; *Tyrrell* v. *Railroad Co.* 111 Mass. 543; *Drury* v. *Railway Co.* 127 id. 571; *Railway Co.* v. *Ryan,* 64 Miss. 399; *Railroad Co.* v. *Pierson,* 35 Cal. 243; *Railroad Co.* v. *Orr,* 8 Kan. 419; *Watson* v. *Railway Co.* 57 Wis. 332; *Lehmicke* v. *Railroad Co.* 19 Minn. 464.

The right of recovery depends on whether the abutter's property has been depreciated in value by the public improvement. *Elgin* v. *Eaton,* 83 Ill. 535; *Railroad Co.* v. *Hall,* 90 id. 42; *Railroad Co.* v. *Haller,* 82 id. 208; *Railroad Co.* v. *Capps,* 67 id. 607; *Eberhart* v. *Railroad Co.* 70 id. 347; *Railroad Co.* v. *Maher,* 91 id. 312; *Railroad Co.* v. *Loeb,* 118 id. 203; *Railroad Co.* v. *Stein,* 75 id. 41; *Page* v. *Railroad Co.* 70 id. 324; *Railroad Co.* v. *Grabill,* 50 id. 241; *Gas Light Co.* v. *Graham,* 28 id. 73.

The compensation for land damaged is its diminution in value by reason of the improvement. *Dupuis* v. *Railway Co.* 115 Ill. 97; *Railroad Co.* v. *Bowman,* 122 id. 595; *Kiernan* v. *Railroad Co.* 123 id. 188; *Green* v. *Chicago,* 97 id. 370; *Bloomington* v. *Miller,* 84 id. 621; *Hyslop* v. *Finch,* 99 id. 171; *Wilson* v. *Railroad Co.* 59 id. 273; *Eberhart* v. *Railroad Co.* 70 id. 347; *Page* v. *Railroad Co.* id. 324.

The order for viewing the premises was proper. Evidence of the value of the property before and after the date when the damages are to be ascertained is admissible. *Roberts* v. *Boston,* 149 Mass. 347; *Shattuck* v. *Railroad Co.* 6 Allen, 115; *Whitman* v. *Railroad Co.* 7 id. 313; 1 Best on Evidence, sec.

197; 1 Taylor on Evidence, (8th ed.) sec. 554; 1 Wharton on Evidence, sec. 345.

As to the right to have the jury inspect, see *Iron Works* v. *Weber,* 129 Ill. 535; *Jupitz* v. *People,* 34 id. 516; *Express Co.* v. *Spellman,* 90 id. 455.

It is within the discretion of the trial judge to allow the plaintiff in an accident case to exhibit his injured limb or body to the jury. Patterson's Ry. Accident Law, sec. 367; *Barber* v. *Perry,* 67 Iowa, 146; *Railroad Co.* v. *Wood,* 113 Ind. 548; *Mulhado* v. *Railroad Co.* 30 N. Y. 370; 33 Minn. 130.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action to recover damages alleged to have been caused to the property of appellant by the construction of the Jackson street bridge and viaduct, and the approach on Canal street, by the city of Chicago. On a trial, the jury returned a verdict in favor of defendant, the city of Chicago. The court overruled a motion for a new trial, and rendered judgment on the verdict. On appeal to the Appellate Court the judgment was affirmed.

The improvement was completed by the city in July or August, 1888. During the month the improvement was completed, Horace A. Hurlbut commenced negotiations with the plaintiff for the purchase of a portion of the property claimed to have been damaged. The negotiations resulted in an option given by the plaintiff to Hurlbut for the property for a certain time, at a stipulated price. Hurlbut did not, however, close the contract within the time specified in the offer, and plaintiff advanced the price of the property, and subsequently, within three or four months, sold to Hurlbut at the advanced price. On the trial, the court permitted the defendant to prove the price placed on the property by the plaintiff in his offer to Hurlbut, and this decision is relied upon as error.

In order to determine whether the plaintiff had been damaged by the construction of the improvement, it was proper

to show the value of the property before and after the improvement had been made. Evidence of what the property was worth in July and August, 1888, was therefore competent for the consideration of the jury. This is not, however, disputed or denied, but it is claimed that the offer of plaintiff is not evidence of the value of the property. While we do not think the offer of an owner of property to sell at a certain price would be conclusive evidence of the value of the property, yet we do think that an offer by the owner to sell is competent evidence against him as an admission, in fixing the value at or near the time the offer was made. Lewis on Eminent Domain, secs. 439, 446; Mills on Eminent Domain, (2d ed.) sec. 172; 6 Am. and Eng. Ency. of Law, 619, 620; *Railway Co.* v. *Ranck,* 78 Pa. St. 454; *Railroad Co.* v. *Greely,* 23 N. H. 237; *Springfield* v. *Schmoock,* 68 Mo. 394; *Watson.* v. *Railway Co.* 57 Wis. 332; *Fogg* v. *Hill,* 21 Me. 529.

In Lewis on Eminent Domain, (sec. 439,) the author says: "In regard to the proof of admissions of the parties, the same general rules apply as in other cases. It is competent to prove the declarations of the owner of the property in question as to its value, and the price at which he has offered to sell it, and other admissions which are pertinent to the issue." See, also, sec. 446.

In 6 American and English Encyclopedia of Law, (sec. 620,) the law on the question is stated as follows: "The declaration of the owner as to the value of his land, and his offer of it at a fixed price, may competently be introduced in evidence against him; and if the land owner dies while the proceedings are pending, his declarations and admissions are competent evidence against his trustees."

The Supreme Court of Wisconsin, in considering the question in *Watson* v. *Railway Co.* 57 Wis. 332, said: "This evidence was introduced for the purpose of showing that the land was in fact of greater value after the road was located across it than the value placed upon it by the appellant's witnesses.

We think the evidence was competent, not only as tending to prove its real value after the railroad was located across it, but as an admission on the part of the appellant of such value. *Whitman* v. *B. M. R. R. Co.* 7 Allen, 313; *Shattuck* v. *S. B. R. R. Co.* 6 id. 117."

In *Railway Co.* v. *Ranck*, 78 Pa. St. 454, the court said: "As evidence bearing on the value of this property, Ranck's own declarations were certainly competent when offered by the company. His offer of it at a fixed price, and the sale of a portion of it, were facts proper to go to the jury as constituting his estimate of its value. It is true, the sale of a portion of the property does not fix with certainty its market value as a whole, but it is an element fair to be considered by the jury."

In 1 Rorer on Railroads, (sec. 379,) and in Pierce on Railroads, (sec. 225,) the doctrine is laid down that the admissions of the owner are competent evidence on the question of value.

It is, however, said, the sale to Yerkes was a forced sale,— that Springer, knowing that Yerkes was bound to have the property for a particular purpose, placed a larger price on the property than it was really worth. Whether Yerkes was so situated that he was compelled to purchase this property, and on that account might pay more for it than it was really worth, was a question which no doubt might be considered by the jury in arriving at its value; but at the same time, such fact, if it existed, affords no reason why the jury might not also consider the statements and declarations of the plaintiff, in connection with the other evidence, in arriving at the value of the property. The option placed on the property by the plaintiff, as an admission of the value of the property, was competent evidence for the jury. Whether it proved the value, was a question for the jury to determine, after a due consideration of all the evidence introduced on the question.

It is next claimed, that the court erred in modifying plaintiff's first and third instructions. In the first instruction the jury were directed, that if they should find, from the evidence,

that the defendant had raised the grade of the street in front of plaintiff's property, and thereby damaged the property, they should find defendant guilty, and assess damages at such sum as they might believe, from the evidence, he sustained, result-ing directly from changing the grade in front of said property, taken in connection with the whole improvement. The court added the following: "In case you believe, from the evidence, that plaintiff's property was damaged by said improvement, taken as a whole." The modification was so slight that it did not materially change the meaning of the instruction; but if it did, the modification was right, and could not mislead the jury. The plaintiff claimed that he was damaged by the im-provement, and in passing upon the question it was the duty of the jury to take into consideration the whole improvement. A part of the improvement, standing alone, may have resulted in damage to plaintiff, but when the entire improvement is taken into consideration, a benefit, rather than a loss, may have been the result, hence the necessity of the attention of the jury being directed to the whole improvement. What has been said in reference to the first modification will apply to the others.

Complaint is also made of appellee's instructions that they directed the jury that "if by the improvement, as a whole, the property is benefited as much as it is damaged by the construc-tion of the approach, alone, then there can be no recovery." The last part of plaintiff's first instruction, prepared by him and given to the jury on the question of the measure of dam-ages, is as follows: "The measure of damages to the property will be the difference, as shown by the evidence, between the fair cash market value of the plaintiff's property without said improvement and change of grade, and the fair cash market value of said property with said improvement, taken as a whole, and change of grade completed." This was given as asked by plaintiff, except the words "taken as a whole" were added by the court, and it contains the same principle embraced

in defendant's instructions which plaintiff now undertakes to condemn. A party can not complain of an instruction given on behalf of his adversary like one given at his own request. But aside from this, we perceive no objection to defendant's instructions. Where an action is brought to recover damages where no part of the plaintiff's property has been taken, but merely damaged by a public improvement, the law is well settled that a recovery can not be had unless the property claimed to be damaged has been depreciated in value by the construction of the public improvement. In other words, if the fair market value of the property is as much immediately after the construction of the improvement as it was before the improvement was made, no damage has been sustained, and no recovery can be had. *Elgin* v. *Eaton*, 83 Ill. 535; *Railroad Co.* v. *Francis*, 70 id. 238; *Railroad Co.* v. *Hall*, 90 id. 42; *Railroad Co.* v. *Haller*, 82 id. 208; *Railroad Co.* v. *Capps*, 67 id. 607; *Eberhart* v. *Railroad Co.* 70 id. 347; *Railroad Co.* v. *Maher*, 91 id. 312; *Railroad Co.* v. *Loeb*, 118 id. 203; *Railroad Co.* v. *Stein*, 75 id. 41; *Page* v. *Railroad Co.* 70 id. 324.

After the jury was impaneled, and before the trial commenced, the court, on motion of defendant, permitted the jury, in charge of an officer, to go upon and view the premises in controversy, and this ruling is relied upon as error. It is not claimed that in the conduct of the view there was any misbehavior on the part of the officer in charge, or on behalf of any of the jury, or on behalf of either representative of the respective parties who accompanied the jury. The naked claim is, a want of power on the part of the court to permit the view. The viaduct was completed in August, 1888, and the trial occurred and the view was had in December, 1889. Evidence of the condition of the property at the time of the trial was competent, and the parties had the right to show the value of the property at the time of the trial, as such evidence would have a bearing on the value of the property before and after the alleged damage. The rule seems to be well established

that evidence of the value of the property before and after the time when the damages are alleged to have been sustained, is admissible, and the time within which such evidence shall be confined is a matter in the sound discretion of the trial court. (*Roberts* v. *Boston*, 149 Mass. 347.) If the parties had the right to prove, by oral testimony, the condition of the property at the time of the trial, (and upon this point we think there can be no doubt,) upon what principle can it be said the court could not allow the jury, in person, to view the premises, and thus ascertain the condition thereof for themselves? The premises, on view, may be regarded, as it is termed in the books, real evidence, and oral testimony in reference to the premises could not be as satisfactory in its character as the real evidence.

In 1 Best on Evidence, (Morgan's ed.) sec. 197, it is said: "Real evidence is either immediate or reported. Immediate real evidence is where the thing which is the source of the evidence is present to the senses of the tribunal." In section 198 it is said: "Reported real evidence is where the thing which is the source of the evidence is not present to the senses of the tribunal, but the existence of it is conveyed to them through the medium of witnesses or documents. This sort of proof is, from its very nature, less satisfactory and convincing than immediate real evidence." See, also, Taylor on Evidence, (8th ed.) sec. 554; 1 Wharton on Evidence, (3d ed.) sec. 345.

It is a common practice in the trial of causes in the circuit court, to permit parties to produce things before the jury for their inspection, and that practice has been approved. Thus, in *Tudor Iron Works* v. *Weber*, 129 Ill. 535, which was an action to recover for a personal injury, we held that the torn clothing which plaintiff was wearing when injured might properly be shown to the jury. In *American Express Co.* v. *Spellman*, 90 Ill. 455, an action against a carrier for the loss of a can of yeast, it was held to be proper to allow plaintiff to put in evidence a can similar to the one in which the yeast was

36—135 ILL.

shipped, for the examination of the jury. In *Jupitz* v. *The People*, 34 Ill. 516, where defendant was on trial for receiving stolen brass couplings, a brass coupling similar to those alleged to have been received was allowed to be submitted to the jury. In other States numerous cases may be found where the same rule of evidence has been adopted. Thus, in an accident case it is held to be within the discretion of the court to allow the plaintiff to exhibit to the jury his injured limb or body. (*Barber* v. *Perry*, 67 Iowa, 146; *Railroad Co.* v. *Wood*, 113 Ind. 548; *Mulhado* v. *Railroad Co.* 30 N. Y. 370; *Hatfield* v. *Railroad Co.* 33 Minn. 130.) The clothes of the accused were held admissible in *The People* v. *Gonzalez*, 35 N. Y. 49, and *Drake* v. *State*, 75 Ga. 413. The weapon used by the accused, in *Wyman* v. *State*, 56 Ga. 113. Surgical instruments, on a trial under an indictment for illegal operations on a woman.— *Commonwealth* v. *Brown*, 121 Mass. 69. The stick with which a burglar struck the prosecutor, on a trial on a charge of burglary.—*State* v. *Mordecai*, 68 N. C. 207. Tools used where a burglary has been committed.—*The People* v. *Larned*, 3 Seld. 455. In *State* v. *Woodruff*, 67 N. C. 89, it was held in a bastardy case that the mother of a bastard child might hold it up for the inspection of the jury. It was also held in *Hatfield* v. *Railroad Co.* 33 Minn. 130, on the trial of an accident case, that the trial court had the power to require the plaintiff to walk across the court room, in the presence of the jury, in order that the jury might see how she had been affected by the injury. It is there said: "As the object of all judicial investigations is, if possible, to do exact justice and obtain the truth in its entire fullness, we have no doubt of the power of a court, in a proper case, to require the party to perform a physical act before the jury that will illustrate or demonstrate the extent and character of his injuries. This is in accordance with analogous cases in other branches of the law. When a view of real estate will aid the jury in reaching a conclusion, it is within the discretion of the court to permit it. When an

inspection of an article of personal property will aid them, it is not infrequent to cause the article to be brought into court for the same purpose. (*Line* v. *Taylor*, 3 Fost. & F. 731; *Lewis* v. *Hartley*, 7 Car. & P. 405.) The practice in patent and in certain equity cases, of allowing tests to be applied before the court, is somewhat analogous in principle. So is the practice of divorce courts, of ordering an examination of the person of the party in certain cases. It is a common practice to allow plaintiffs, in actions for personal injuries, to exhibit to the jury their wounds, in order to show their extent, or to enable a surgeon to demonstrate their nature and character. This has been held proper. (*Mulhado* v. *Brooklyn City Ry. Co.* 30 N. Y. 370.) If, for these purposes, a plaintiff may exhibit his injuries, there would seem to be no reason why, under proper circumstances, he may not be required to do the same thing, for a like purpose, upon request of the defendant." See, also, 1 Wharton on Evidence, (3d ed.) sec. 345. In *Butler* v. *Rickets*, 6 Iowa, 92, where there was a controversy in regard to two horses, and the trial court allowed the jury to go in the court-house yard and inspect the horses, the action of the court was sustained. It is there said: "There is no objection, in principle, to a jury seeing an object which is the subject of testimony. By this means they may obtain clearer views and be able to form a better opinion." (See, also, 1 Hale's P. C. 635.) In *Cozzens* v. *Higgins*, 3 Keys, 206, in an action of trespass *quare clausum*, the Court of Appeals held that it was not error to permit the plaintiff to put in evidence a photographic view of the plaintiff's cellar after the trespass. In *G. T. School* v. *Dubuque*, 64 Iowa, 736, a stereoscopic view of property injured by water was held admissible in evidence.

Other cases might be cited where the same doctrine is laid down, but we have referred to enough to establish the rule that on a trial, in a proper case, things may be exhibited to the jury, and if evidence of that character may be brought before the jury, upon the same principle we perceive no good

reason why a jury may not, under proper regulations established by the court, go upon and view premises which are the subject matter of the litigation. Had the plaintiff procured a careful survey and plat of the premises, showing the location, with reference to streets and alleys, of all buildings, and showing the improvement made by the city, such a paper would have been competent evidence to go to the jury. Had a photograph or picture of the premises been taken, it would have been competent evidence to go to the jury. If a plat or a photograph of the premises would be competent evidence, why not allow the jury to look at the property itself, instead of a picture of the same? There may be cases where a trial court should not grant a view of premises, where it would be expensive, or cause delay, or where a view would serve no useful purpose; but this affords no reason for a ruling that the power to order a view does not exist, or should not be exercised in any case. If the appellant desired to control the effect the view might have on the jury, in connection with the other evidence introduced, that might have been done by an appropriate instruction. But as no instruction was asked on that point, he is in no position to complain.

In what cases a view was allowed at common law is a subject upon which the authorities we have examined are not very clear; but a view by jury, as we understand the subject, is sanctioned by the common law practice. In Stearns on Real Actions, 102, the author says: "In the ancient practice there were two kinds of view in real actions: First, view by the party; second, view by the jury." The author further says: "View by the jury was allowed in several real actions, as, assize of novel disseizin, waste, and assize of nuisance. In these cases, therefore, a view by the party being rendered unnecessary, was not permitted by the law. (8 Henry VI, 27; 50 Edw. III, 11.) The design of this proceeding was to enable the jury better to understand the matter in controversy between the parties. It was not confined to real actions, but

was allowed in several personal actions for an injury to the realty, as, trespass *quare clausum fregit*, trespass on the case, and nuisance."

In Burrow's note in 1 Burr. 253, the practice in regard to jury views, as settled upon by the King's Bench, is stated by the reporter: "Before the 4 and 5 Anne, c. 16, sec. 8, there could be no view till *after* the cause had been brought on to trial. *If* the court saw the question involved in obscurity, which might be cleared up by a view, the cause was put off, that the jurors might have a view before it came on to be tried again. The rule for a view proceeded upon the previous opinion of the court or judge, *at* the trial, 'that the nature of the question made a view not only proper, but *necessary*,' for the judges at the assizes were not to give way to the delay and expense of a view, unless they saw that the cause could not be understood without one. However, it often happened, in fact, that upon the desire of either party, causes were put off for want of a view, upon specious allegations, from the nature of the question, that 'a view was proper,' without going into the proof, so as to be able to judge whether the evidence might not be understood without it. This circuity occasioned delay and expense, to prevent which the 4 and 5 Anne, c. 16, sec. 8, empowered the courts at Westminster to grant a view, in the first instance, *previous* to the trial. As a view *might* be of use, and in this shape was attended with *no delay* and but little expense, it became the practice to grant them *of course*, upon the motion of *either* party."

In 2 Tidd's Practice, 795, in speaking on the subject, the author says: "In actions of waste, trespass *quare clausum*, and other actions, where it appears to the court, in vacation, to be proper and necessary that the jurors * * * who are to try the issue should, for the better understanding of the evidence, have a view of the * * * lands or place in question, the court or judge will grant a rule for such view, pursuant to the statute 4 Anne and 6 George IV, c. 50, sec. 23.

* * * Before the making of the above statute there could have been no view till after the cause had been brought on to trial, when, if the court saw the question involved in any obscurity which might be cleared up by a view, the cause was put off, that the jurors might have a view before it came on again." See, also, Sellen's Practice in King's Bench, 449.

If at common law, independent of any English statute, the court had the power to order a view by jury, (as we think it plain the court had such power,) as we have adopted the common law in this State, our courts have the same power.

It is argued by counsel, because the legislature has provided for a view in condemnation cases, that it should be held that a view was unauthorized in all other cases. We do not regard this position well taken. The Eminent Domain act does not merely permit the court, in a condemnation proceeding, to allow the jury to view the premises, but the statute absolutely requires the court to do so, on the application of either party. The statute is imperative. It declares: "Said jury shall, at the request of either party, go upon the land." (Rev. Stat. chap. 47, sec. 9.) The fact, therefore, that the statute makes it obligatory on the court to permit the jury, on the application of either party, to view the premises on the trial of a cause under the Eminent Domain act, has no bearing whatever on the question whether the court has the power, in the exercise of its discretion, to order a view. Here it is apparent that the jury could obtain a much better understanding of the issue presented by the pleadings by a view of the premises, and in the exercise of a sound legal discretion we think the court did not err in allowing the view.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

BAILEY and WILKIN, JJ.: We do not concur with that portion of the foregoing opinion which relates to the action of the court in permitting the jury to go upon and view the premises. In our opinion such view by the jury was improper.