## Lake E. & W. Ry. Co. v. Patrick Purcell.

1. MEASURE OF DAMAGES—*For Injury to Real Estate.*—In a suit by a land owner to recover damages to his land caused by the construction of an improvement on adjoining land and the diversion of a natural watercourse, the measure of damages is the difference between the market value of the premises before the improvement was made and after it was constructed and in operation.

2. SAME—*For Injury to Real Estate, of a Permanent Character.*—In an action to recover damages for a deterioration in the value of real estate occasioned by a nuisance of a permanent character, all damages for the past and future injury to the property may be recovered. and one recovery in such a case is a bar to all future actions for the same cause.

3. EVIDENCE—*Of Injury to Real Estate by Changing the Course of a Stream.*—In an action to recover damages for a deterioration in the value of real estate caused by an interference with a watercourse, the fact that the premises are overflowed, that the soil is washed away, and that there are cast upon the premises by such overflow, sewer filth, offal, and other noxious substances, are all proper matters of proof to show how the market value of the premises is affected by the improvement.

4.　Same—*Viewing Real Estate Alleged to Have Been Damaged.*—In actions to recover damages for injuries to real estate, whether the court, by agreement of parties, will allow the jury to view the premises, is a matter resting in the sound discretion of the court.

5.　Appeals and Errors—*Where Jury Were Permitted to View Premises Claimed to Have Been Damaged.*—It is impossible for a court of appeal to determine to what extent a jury were influenced by an examination of real estate alleged to have been damaged, and in this case the court is of opinion that the result of the personal examination may have been such as to have fully justified the damages assessed, even if it was clear that the preponderance of the evidence as preserved in the record was against so large an amount.

Trespass on the Case, for injury to real estate. Appeal from the Circuit Court of McLean County; the Hon. Alfred Sample, Judge, presiding. Heard in this court at the November term, 1897. Affirmed. Opinion filed June 3, 1898.

### Statement of the Case.

Patrick Purcell is the owner of a tract of land in the city of Bloomington, bounded by Washington street on the south and by the L. E. & W. R. R. right of way on the east. As originally built, the railroad on the east side of Purcell's land was built upon a high wooden trestle, beginning at Washington street and extending in a curved line to the northwest, beyond the north limits of his land. On the north and a few feet from his boundary there is a large creek about twenty feet in width, running west in a natural watercourse, and running in the same channel for more than forty years. A branch of this creek comes from the south across the Big Four track (which track runs parallel with, and just south of Washington street), which branch ran north from the southeast corner of his land and emptied into the creek at a point about three hundred feet from his land.

This branch passed under appellant's right of way at his southeast corner, and, as it ran originally, the railroad land was between his premises and the branch. This branch is the outlet of one system of sewerage of the city of Bloomington, and carries in its course the offal and sewer filth of a large part of the city. This branch is also a natural water-

course and channel, where it had been running for more than twenty years before the commencement of this suit.

In the summer of 1895 the appellant chose to fill in the trestle with earth and make a solid embankment, upon which its track now rests, which embankment is about twenty feet high at the culvert.

In the creek in question it built a permanent eight foot stone arch or culvert, paving the bottom with stone. This stone arch is seventy-five feet long, the center of the arch coinciding with the center of its right of way, making the western terminus of the arch within twelve and a half feet of the west line of its right of way, which west line of its right of way is the east line of Purcell's land. The creek ran directly west. The track ran northwest. In constructing the arch the railroad company set it at right angles to its track, diverting the course of the creek fifty feet to the north on the east of the culvert, and causing the water as it emerged from the arch to strike with great force against the bank of Purcell's land. The channel of the creek east of the railroad is from twelve to twenty feet wide. The result of that is, that in time of heavy rain the culvert is not wide enough to admit the passage of the water, and it is confined above or east of the arch, which increases the speed of the current as it emerges from the arch and strikes against Purcell's land.

At the time appellant constructed said embankment it filled in the channel of the branch coming from the south, and thereby saved to itself the necessity of a culvert for said branch under its right of way. It provided an outlet for the water coming through the branch by digging a ditch on the south of west side of its right of way along the edge of appellee's land, so close to the edge that stakes set by his surveyor, fell into the ditch. This new ditch was extended until it emptied into the creek at the stone culvert at the northeast corner of Purcell's land. To dig this ditch the railroad cut through a hill in which it was compelled to dig the ditch seven and a half feet deep. The ditch varies in depth from two and a half to seven feet. It is from ten to

fourteen feet wide at the top, and two feet wide at the bottom. There is a sharp fall in the north three hundred feet of appellee's land, and for the north three hundred feet of the ditch it is only from two to three feet deep. This ditch occupies the entire space between the western edge of the culvert and appellee's land, and by digging it, the railroad diverted a stream of water from its natural channel into a new and entire different channel and gave appellee "a water front," along the entire east line of his premises, seven hundred feet in length, through which waterway it sent a current of sewage. By changing the course of the creek in the manner it did, appellant caused the stream of water flowing through the new ditch to strike at right angles the powerful stream of the creek coming through the stone arch, and thus impeded the flow of water in the ditch, causing it, with its contents of offal, filth, and sewage, to overflow the entire north end of appellee's premises, which flood reaches nearly to his dwelling house, with a resulting deposit of slime and filth left on the ground when the water subsides, and an accompaniment of vile and noxious odors.

THOMAS F. TIPTON and THOMAS W. TIPTON, attorneys for appellant; JOHN B. COCKRUM, of counsel.

J. J. MORRISSEY, attorney for appellee.

MR. JUSTICE GLENN DELIVERED THE OPINION OF THE COURT.

It is conceded on behalf of appellant, that the building of the stone arch at right angles with the track, the digging of the new ditch and changing the watercourse, and filling in the trestle work and making the embankment, were improvements not inconsistent with good railroading, and were of great value to the appellant, and permanent in their character.

The damages for which a recovery is sought in the second count of appellee's declaration, are those accruing by the diversion of the natural watercourse of the creek and causing the land to be washed away, and by causing his prem-

ises to be frequently overflowed, and the grass and vege-tables growing thereon to be destroyed, and by the overflow of the creek, causing deposits of large quantities of offal, sewer filth and other noxious and vile-smelling substances, upon his premises. The damages that may be recovered in this case are of a kindred character to those which may be recovered in an action under the eminent domain act, where there are damages accruing on account of the con-struction and operation of a railroad, to premises not taken. The fact that the premises are overflowed, that the soil is washed away, that there are cast upon the premises by such overflow, sewer filth, offal and other noxious substances are all proper matters of proof to show how the market value of the premises are affected by the improvement.

The rule adopted by the court below as to the measure of damages, was the difference between the market value of the premises before the improvement was made, and after it was constructed and in operation. This rule is sustained by an unbroken line of authority. Evidence was admitted upon the trial by the respective parties, with reference to the market value of appellee's premises, both before and after the making the improvement, without objection. An objection to this testimony can not be now urged, for the first time, in this court.

With the permission of the court, and by agreement of the parties, in charge of an officer, during the progress of the trial, the jury made a personal view of the premises. It must be regarded as settled in this State, whether the court in this character of case, by agreement of the parties, will allow the jury to make a personal view of the premises, is a matter resting in the sound discretion of the court. Pike v. City of Chicago, 155 Ill. 656. What the jury learned from their own personal observations of the *locus in quo*, we can not know. The premises on view may be regarded, as it is termed in the books, as real evidence, which is of the most satisfactory character. It is evident this evidence should be considered by the jury with the other evidence. To what extent they were influenced by such examination

in their finding, it is impossible to tell.  The result of the personal examination may have been such as to have fully justified the damages assessed, even if it were clear the preponderance of the evidence, as preserved in the record, was against so large an amount.  Chicago & I. R. R. Co. v. Hopkins, 90 Ill. 316; Springer v. City of Chicago, 135 Ill. 552;  Maywood Co. v. Village of Maywood, 140 Ill. 216; Vane v. City of Evanston, 150 Ill. 616;  Chicago, B. & Q. R. R. Co. v. City of Naperville, 166 Ill. 87; City of Springfield v. Dalby, 139 Ill. 34; Pittsburgh, Ft. W. & C. Ry. Co. v. Lyons, 159 Ill. 576; Peoria & F. Ry. Co. v. Barnum, 107 Ill. 160.

If the appellant desired to control the effect the view might have on the jury, in connection with the other evidence introduced, that might have been done by an appropriate instruction.  Having failed to ask an instruction in this regard, he is now in no position to complain.  Springer v. City of Chicago, 135 Ill. 552.

This action is brought by appellee for a deterioration in the value of his real estate occasioned by a nuisance of a permanent character, and all damages for the past and future injury to his property may be recovered in this action, and one recovery in such case is a bar to all future actions for the same cause.  Kankakee & S. R. R. Co. v. Horan, 131 Ill. 288; Chicago & A. R. R. Co. v. Maher, 91 Ill. 312;  Chicago & E. I. R. R. Co. v. Loeb, 118 Ill. 203; Chicago & E. I. R. R. Co. v. McAuley, 121 Ill. 160; Doane v. Lake St. El. R. R. Co., 165 Ill. 523.

The jury assessed appellee's damages at $300, which finding is fully sustained by the facts and circumstances in proof and the law as applicable to the evidence.  We therefore hold there was no error in the giving the instructions asked on behalf of appellee.  There was no error in the modification or refusal of the instructions asked on behalf of the appellant.  All that was applicable to the case, contained in appellant's refused instructions, was fully covered by those given.  We are of opinion that the judgment of the Circuit Court should be affirmed.