**Abraham L. Welfelt, Appellee, v. Illinois Central Railroad Company, Appellant.**

**Gen. No. 5,083.**

1. PLEADING—*aider by verdict.*  Where a plaintiff states his cause of action defectively it will be presumed after verdict that all circumstances necessary in form or substance to complete the cause of action so defectively stated, were proved at the trial, as they must be in order to entitle the plaintiff to recover.

2. PLEADING—*effect of omission of the word "reasonable."*  *Held,* that the omission of the word "reasonable" in a declaration filed in an action on the case for personal injuries, was not material after verdict.

3. PLEADING—*what allegations not necessary in action on the case.*  In an action on the case for personal injuries the allegation of duty is not material; if the facts are set up the law implies the duty.

4. NEGLIGENCE—*what competent upon question of notice of defective conditions.*  *Held,* that testimony as to defects in windows other than the one that fell and caused the injury in question, was competent upon the question of notice to the defendant of the defective condition of the window which fell, if there had also been proof in the record sufficient to warrant the jury in finding that there was a defect in the window which fell of which the defendant should have taken notice, but in the absence of such proof the testimony as to the defects in windows other than the one that so fell was incompetent.

5. PERSONAL INJURIES—*what essential to establish act of God.*  A loss or injury is due to the act of God when it is occasioned exclusively by natural causes such as could not be prevented by human care, skill and foresight.  If there is an intervening human

agency which contributes to cause the damage it cannot be considered as caused by an act of God.

6. INSTRUCTIONS—*when cannot be complained of.* A party cannot complain of instructions which contained an alleged error likewise contained in others given at his own instance.

7. INSTRUCTIONS—*upon duty of master to furnish safe place to work.* An instruction is proper which tells the jury that it was the duty of the master to have used ordinary care and prudence in furnishing the servant at the time of the accident with a reasonably safe place in which to work or to have used reasonable precautions to maintain and keep. such appliances in a reasonably safe condition.

Action in case for personal injuries. Appeal from the Circuit Court of Stephenson county; the Hon. R. S. FARRAND, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded. Opinion filed June 10, 1909.

J. H. STEARNS and OSCAR R. ZIPF, for appellant; J. M. DICKINSON, of counsel.

REUBEN R. TIFFANY, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought by Abraham L. Welfelt, appellee, against the Illinois Central Railroad Company, appellant, in the Circuit Court of Stephenson county, to recover damages for personal injuries alleged to have been sustained by him, while employed by appellant in its roundhouse in Freeport. The declaration consisted of four counts. The first alleged that, on July 3, 1907, appellant was possessed of and operated a roundhouse in which appellee was employed and that located in said building were certain windows; that appellant negligently permitted one of said windows to be so unsafely fastened that it and its frame fell and was blown into said roundhouse, by means whereof appellee was struck on the head and knocked down and his head, back and spine were injured. The second count alleged that the frame work of said window was attached to the brick

work by means of nails driven therein to certain blocks of wood laid in said brick work for the purpose of fastening said window frames thereto; and that appellant negligently permitted the nails so driven through said frames into said blocks to become rusty and worn out and unsafe, and also permitted said blocks of wood to become split, rotted, insecure, and unsafe to hold said nails and said window frames, all of which appellant knew, or might have known by the exercise of ordinary care, by means whereof, while appellee was passing in front of one of said windows, it, by reason of being insecurely fastened, fell, was blown in and struck appellee upon the head and back and injured him. The third count alleged that appellant well knew of its duty to furnish appellee with a reasonably safe building in which to work, and that appellant knew, or might have known by the exercise of reasonable care, of its failure to provide a suitable place for appellee to work, and by its failure so to do, appellee was struck by one of the windows and frames in the building, and was injured. The fourth count alleged that appellant negligently permitted one of said windows, a double window, and its frame, to be so insecurely fastened that it fell; by reason whereof, appellee was struck on the head, knocking him to the floor and injuring his back. The first, second and fourth counts charged appellant with the duty of furnishing appellee with a reasonably safe place in which to work. Each count alleged that appellee was injured while in the discharge of his duties, and while in the exercise of ordinary care for his own safety. There was a plea of not guilty, a trial, and a verdict for appellee for $5,000. A motion for a new trial was denied, judgment was entered on the verdict and the company prosecutes this appeal.

The roundhouse was built prior to 1890. It was constructed of brick, and contained stalls for twenty-four engines, centering from a turn-table. In the building were twenty-two double or twin windows, six-

teen feet high and seven feet wide. Each single window was about three feet wide and consisted of three sashes. The upper sash, of six lights, was separated from the rest of the window by a wooden bar. The two lower sashes, of nine lights each, were so arranged that they balanced by weights running in wooden boxes at the side of the window. No weights had, however, been placed in the boxes. Each double window rested upon a cut stone sill, and was enclosed in a wooden frame, consisting of a plank sub-sill, two jambs formed by the weight boxes, with a jamb or double box between the windows, and a top piece consisting of a wooden segment fitting the frame to the arch of brick which topped the window. The sub-sill projected about four inches on each side of the window frame, being built into the brick work. The frame was about nine inches thick, or the pieces of wood composing it were about nine inches wide, and the brick wall was twelve inches thick. On the outside, the brick work projected over the frame about three inches. Appellee commenced work at the roundhouse in October, 1903, and, for fourteen months prior to his injury, worked nights, packing driving boxes in engine trucks and tank truck cellars, and helping to put in driving springs, truck springs and tank springs. He received his instructions relative to his work on slips of paper, placed on a bench near his locker. He went to work on the evening of July 3, 1907, at 7 o'clock, and at about 8:30 that evening having finished a piece of work, he started to obtain directions for other work, and, while on his way from his locker to his bench, one of the windows fell, or was blown inwards, during a high wind, and some part struck him, crushing him to the plank floor, wounding his head, and, he claims, injuring his back and spine.

A number of reasons are urged why there can be no recovery under the declaration. The only one we shall consider independently, is that to the third count, which charged appellant with the duty of providing

appellee with a reasonably safe and suitable building in which to perform his work, and a breach of such duty. The averment of the breach omitted the word "reasonable," and alleged that the accident happened "by reason of the failure of appellant to provide a suitable and safe place." Appellant argues that there was neither an averment of a duty nor an averment of a breach. As no demurrer was interposed, without passing on the question whether the count was obnoxious to demurrer, we hold it good after verdict. "Where the plaintiff states his cause of action defectively, it will be presumed after verdict, that all circumstances necessary, in form or substance, to complete the title so defectively stated, were proved at the trial, as they must have been proved in order to entitle the plaintiff to recover. (2 Tidd's Practice, page 919.) The ordinary presumptions, which obtain after verdict, and by operation of which a defective statement of a good cause of action is said to be cured, may sometimes be excluded by the character of the instructions given. (Joliet Steel Co. v. Shields, 134 Ill. 209; Libby, McNeill & Libby v. Scherman, 146 Ill. 540.) The converse of this also must be true, namely, that such presumptions will be indulged in where the instructions favor them, and do not exclude them." Cribben v. Callaghan, 156 Ill. 549. Here the jury were instructed on behalf of appellee that it was the duty of appellant to use ordinary care and prudence in furnishing to appellee a reasonably safe place in which to work, and the same care and prudence to keep such place in a reasonably safe condition. Moreover, the allegation of duty complained of was not a material one. It is to be remembered that it is not necessary to allege that a certain act or line of conduct is a duty, because the law implies the duty from the facts stated. Cribben v. Callaghan, *supra*.

The trial court permitted appellee to prove, over the objection of appellant, the defective condition of

other windows than the one that fell, prior to the time of the accident. One witness testified that he saw a broken window lying on the floor about two years before the trial, which, he said, was blown in. Two others, that they together, in 1905, had seen a window leaning in at the top, probably a foot. Another testified that, about a couple of years before the trial, he saw a window that came out at the top, and the whole frame of which waved back and forth; that he and the boss carpenter fixed it, the boss carpenter driving wooden wedges between the wall and frame. Another witness testified that, about three years before the trial, he renailed some stops on these windows and found some nails rusted off. Another testified that some time before the trial he had helped the boss carpenter put one of these windows back in place. Appellant's foreman of bridges and buildings testified that, about two years before the trial, he fixed a window in the roundhouse that had become loosened at the top, by putting a wooden bar across the inside of the building and bolts through the wall to prevent it getting farther out of place.

At the close of all the evidence, counsel for appellant moved the court to strike from the record all evidence as to defects in any window other than the one that fell and caused the injury to appellee, on the ground that it was incompetent. The court denied the motion, which ruling is now urged as error.

In City of Ft. Wayne v. Coombs, 7 N. E. Rep. 743, a suit for personal injuries caused by a defective sewer, the trial court permitted appellees to prove that there was a break in the sewer about one hundred feet distant from the point where the break occurred which caused the injury for which a recovery was sought. The Supreme Court of Indiana, in reviewing the judgment of the lower court, said: "This evidence was competent, in connection with the other testimony in the case, for the purpose of charging the city with knowledge, as well as for the purpose of showing that

the materials used were defective, or that the work of construction was not well done, and also for the purpose of showing that the sewer had, by reason of time and use, got out of repair.''

In Propsom v. Leatham, 80 Wis. 608, an action to recover damages for personal injuries sustained by plaintiff while in the employ of defendants, alleged to have been cause by defendants' negligence in permitting their dock upon which plaintiff was at work to become and remain out of repair and in an unsafe condition, one Wead testified to the effect that prior to the accident there were a good many holes in the dock where shingles were commonly piled, and that the planks were pretty well worn, and that there were at least fifteen or twenty holes, some of them large enough to take a man's foot in, some smaller and some larger; and that the holes were weather beaten and showed signs of being old holes. The jury returned a special verdict to the effect that plaintiff was injured by stepping through a hole or defective place in defendant's dock. It was urged on appeal that the court erred in admitting evidence of other defects in the dock than the one which caused the accident. The court said: ''The testimony of the witness Wead was admissible, as this court has held it was proper to show that a bridge was out of repair by evidence that the planks were old and decayed at other points than the one where the accident occurred, because, if the authorities had done their duty in repairing other defective places, of which from their character and number they might be presumed to have had notice, they would probably have discovered the particular defect in question. * * * It was certainly notice to the defendants, if the dock was defective in many places by reason of holes they should cause the structure to be thoroughly examined frequently and all defects repaired, and they would fail in the performance of their duty if they did not do this after such a warning as to its condition.''

In Randall v. N. W. Tel. Co., 54 Wis. 140, the action was for injuries alleged to have been caused by the negligence of the telegraph company in allowing its poles and wires to fall down and obstruct the highway on which plaintiff was traveling. The court said: "The fact that the poles and wires were down at other places and times, within a few miles of the place, and within a few months of the time when the plaintiff was injured, would seem to us competent proof upon the question of the negligence of the company in maintaining the line in a safe condition."

In Spearbracker v. Larrabee, 64 Wis. 573, proof of other defects in the bridge in question was admitted as pertinent to the question of notice to the town authorities of the particular defect which caused the injury complained of. In speaking of the competency of this testimony, the court there said: "We think the testimony was proper with that view, because if the authorities had done their duty in repairing other places of defect of which they might be presumed, from their number and character, to have had notice, they would have probably discovered the defect in question."

On the authority of the above case we conclude that the testimony as to defects in windows other than the one that fell and caused the injury to appellee was in itself competent upon the question of notice to appellant of the defective condition of the window which fell, if there had also been proof in the record sufficient to warrant the jury in finding that there was a defect in the window which fell of which appellant should have taken notice. But we are of opinion that the judgment must be reversed for lack of any sufficient evidence that the window which fell was defective. There is much positive proof in the record that the window frame was set into this brick wall in the usual and customary manner of setting window frames in brick buildings. There is no testimony to the contrary, and that fact stands as proved. There is no

proof that there was any defect in the method in which this particular frame was set in this brick wall, or that it had ever been loose since the building was erected, nor any proof that any condition existed at this window frame from which appellant by inspection could have ascertained that the window frame was defectively set into the brick wall or that there was any danger that it would blow in during a high wind. These twenty-two windows had been in this building some twenty years. Some years before this accident somewhere from two to four of these windows had at different times become loose and showed defects and they had been promptly repaired and strengthened. We do not think the jury could be permitted to infer from that fact alone that the other eighteen or twenty windows which had never been loose and had never shown any indication of being defectively inserted in the brick wall were in fact defective and required inspection or had any defects that an inspection would disclose. The record is practically silent as to any condition in the window which fell and injured appellee which required inspection or repair. We are of the opinion that the evidence regarding the two or four other windows, while competent, was not sufficient to make a case for appellee.

Appellant argues that the accident in question was the result of *vis major* or the act of God, for which appellant cannot be held responsible.

It appears from the evidence that, between 6 and 9 o'clock on the evening of July 3, 1907, a severe wind storm prevailed across Stephenson county from north-west to southeast. The evidence, however, did not disclose its exact velocity. It was shown that at Buena Vista, twelve miles from Freeport, a barn thirty-five by fifty-four feet, built that spring, moved on its foundation about eight inches on the west side; and that another barn, forty by seventy feet, was moved about one and one-half inches at its west end, and that trees were blown down. All the damage shown to have

been done in the city of Freeport, aside from that at the roundhouse, was that electric wires were broken and branches blown from trees. One witness testified that he saw scraps of paper and small pieces of wood and tin cans blowing up the street. A witness in the employ of the Electric Company at Freeport testified that a strong wind would break the electric wires, and frequently did so; and that generally during a storm, two or three were broken.

The roundhouse had been built for more than twenty years, and during that period the material of the window frames and supporting brick work had been exposed to the ravages of time and the elements; and there is no proof that during this time, the window that fell was ever inspected or repaired; and if the proof had shown that the window which fell was defective and that appellant had notice of such defect and should have inspected and repaired it, then the mere fact that a high wind was blowing at and before the time the window fell would not make the falling of the window an act of God, so as to exempt appellant from liability. "A loss or injury is due to the act of God when it is occasioned exclusively by natural causes such as could not be prevented by human care, skill and foresight." "If there is any intervening human agency which contributes to cause the damage it cannot be considered as caused by an act of God." Sandy v. Lake St. El. R. R. Co., 235 Ill. 202; Wald v. P. C. C. & St. L. R. R. Co., 162 Ill. 545; City of Chicago v. Smith, 95 Ill. App. 335.

The court gave two instructions for appellee. Appellant argues that, because of the absence of proof of its negligence, they erroneously induced the verdict. One told the jury how to determine where lay the preponderance of evidence, which under the evidence, the court was justified in giving. Moreover, while the wording of appellant's thirteenth instruction was slightly different, its meaning was the same; and the rule is well settled that one party cannot induce the court to instruct the jury upon the law in a certain

manner, even though erroneously, and then have the case reversed by reason of the same error found in instructions of his adversary. "A party cannot complain of an instruction given on behalf of his adversary like one given at his request." Springer v. City of Chicago, 135 Ill. 552; Woods v. Dailey, 211 Ill. 495; Purtel v. Bell, 225 Ill. 523. The other instruction told the jury that it was the duty of appellant to have used ordinary care and prudence in furnishing appellee, at the time of the accident, with a reasonably safe place in which to work; and to have used all reasonable precautions to maintain and keep such place in a reasonably safe condition. In Cribben v. Callaghan, *supra,* it was said: "The duty of the employer is to furnish a suitable place, where the employee may perform his work without exposure to dangers that do not come within the obvious scope of the employment in the business as actively carried on." There was no error in the instruction.

Appellant asked, and the court refused, an instruction that told the jury that they should disregard all testimony introduced in the case regarding alleged defects in window frames other than the one that it is charged caused the injury to appellee, and unless they believed that appellee had proved by a preponderance of the evidence that such frame prior to the accident was not reasonably safe, which appellant knew, or could have known by the exercise of reasonable care or inspection, they should find appellant not guilty. The first finding required thereby embraced the same question contained in the motion to strike from the record testimony relative to the condition of the other windows, discussed in another paragraph of this opinion, and there was no error in its refusal.

For the want of any sufficient evidence to prove the averments of the declaration concerning the window which blew in and injured appellee at the time in question, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*