### John McInturff et al., Appellees, v. Insurance Company of North America, Appellant.

1. INSTRUCTIONS—*when cannot be complained of.* A party cannot be heard to complain that the opposite party has given instructions upon the same theory of the law that it itself has adopted in its instructions to the jury as controlling the case.

2. INSURANCE—*when proofs of loss waived.* Proofs of loss are waived where it appeared that the company's agent was notified of the loss, the company's adjuster came, inventories were made, offers of compromise submitted and rejected and formal arbitration entered into followed by an award.

3. EVIDENCE—*when transcript of testimony of deceased witness incompetent.* In an action to recover for an insurance loss the testimony of a deceased witness which was given in a criminal prosecution for arson is not competent in support of a defense predicated upon a charge of arson because of the lack of identity of parties.

Assumpsit. Appeal from the Circuit Court of Pulaski county; the Hon. W. W. DUNCAN, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed April 9, 1910.

W. A. SPANN and GEORGE E. MARTIN, for appellant.

WALL & CASTER, for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

By this appeal, appellant presents for review by this court, the record in a case wherein appellees recovered a judgment for $3,952.23 for loss by fire of property covered by insurance policies issued by it.

The points relied on by appellant for reversal, are that the verdict in the case is contrary to the evidence, that certain instructions given for appellees were erroneous, that appellees failed to make sworn proof of loss as provided for by the policies of insurance, and that the court erred in refusing to admit certain evidence offered by appellant.

The proofs showed that appellees had insurance in appellant company amounting in all to $8,400, covering two dwelling houses, household furniture, a barn, horses, mules, cattle, hay, grain, etc. Three thousand dollars of the insurance was upon the dwelling house in which they lived and $2,000 upon household furniture. This suit is concerned with the dwelling house, which was totally destroyed by fire, and the furniture therein, the greater portion of which was destroyed or damaged. At the time of the fire, which occurred at 11 o'clock A. M. on March 13, 1908, John McInturff, one of the appellees, was absent from home in the city of Cairo, some 13 miles distant. His wife, Sarah McInturff, the other appellee, four of their children, her sister-in-law, Mrs. Thomas Blay, and one of her children were engaged in washing clothes. When the fire was discovered near the flue, into which extended the pipe leading from the stove used by them in heating the water, an alarm was given by ringing the bell and otherwise and some of the neighbors came to render assistance, but it appears to have been impossible to save the house. Three days before the fire, appellees having ascertained that they had two policies of insurance of $750 each on a dwelling house on another part

of their farm, upon which they claimed they only desired to carry one policy of $750, requested appellant's agent to transfer one of the policies to the house in which they lived, which was the one afterwards destroyed by fire. The agent told them that the unearned premium on one of the policies would pay for $500 additional insurance on their own dwelling house and this was added thereto, the amount before that time carried thereon being but $2,500. At the same time additional insurance appears to have been taken out on other property which was not destroyed by the fire.

The proofs showed, and it is not seriously contested by appellant, that the house which was destroyed, was worth more than the $3,000 for which it was insured, and while there was some contest as to the value of the furniture burned and damaged, the proofs appear to show that the amount recovered for the same was not excessive.

Appellant's agent at Mound City, who issued the policy, was notified of the fire and the next day went out to view the premises. Later, on April 8th, the agent and an adjuster for appellant, came out. No settlement was then made but it was agreed that these same parties should meet again with appellees on April 15th, at which time appellees were to present a list of the property destroyed. They met on the day last named and appellee presented his list but no settlement being made, negotiations were continued until April 16, 1908, at which time a lengthy submission to arbitration was entered into and signed by appellees and appellant, the form employed evidently being one used by appellant in its business. The appraisers took an oath which they signed and appointed an umpire who was also sworn, and as provided for in the form of arbitration used, and later the appraisers and umpire made a report in writing, by which they awarded appellees for loss on their dwelling house $2,326.73 and on furniture $1,533.98 making a total of $3,860.71. Appellant how-

ever afterwards refused to pay the award and this suit resulted.

The defense set up by appellant was, and is, that appellees wilfully burned the house and contents or caused the same to be done with intent to defraud appellant, that they made false representations as to their loss and refused to furnish proof of loss as required by the policies. While there was some proof tending to show a guilty intent to burn the house on the part of appellees, yet the great weight of the evidence, as admitted, supported appellees' contention that the burning of the house was an accident and due in no manner whatever to any intention on their part to burn the house or cause the same to be done or to injure appellant, and upon the facts the jury could not have reasonably done otherwise than to find for appellees.

The instructions given for appellees which are complained of by appellant, told the jury, that before they could find the plaintiffs guilty of wilfully burning the property in question, or causing the same to be done, they must so believe from the evidence beyond a reasonable doubt. It is unnecessary for us, however, to discuss the question whether in a civil case a criminal charge must be proved beyond a reasonable doubt, for the reason that appellant itself gave instructions requiring the same measure of proof. Appellant, of course, cannot be heard to complain that appellees have given instructions upon the same theory of the law that it, itself, has adopted in its instructions to the jury as controlling the case.    B. & O. S. W. Ry. Co. v. Wheeler, 63 Ill. App. 193; Springer v. Chicago, 135 Ill. 552; Baker v. Fawcett, 69 Ill. App. 300.

Appellees' defense to the charge that they had failed to furnish sworn proofs of loss as required by the policies, was that the same had been waived on the part of the company. In this case the company's agent was notified, the adjuster came, inventories of the items of loss were made and offers of an amount in compromise of the claim made by the adjuster. This being re-

fused, written articles of submission to arbitration were entered into and an award made by the arbitrators and umpire provided for by the same, which appellant refused to pay.  It is hard to imagine how a clearer or more emphatic waiver of sworn proof of loss could be made by appellant than was done.

The most important question submitted however, and the one upon which appellant apparently places its greatest reliance for a reversal of the judgment, is that relating to the refusal of the court to admit certain evidence offered by it.  After the burning of the property in question appellees were arrested for arson upon information furnished by Thomas Blay, a brother of appellee, Sarah McInturff, with whom she and her husband had had some trouble.  Upon the trial which resulted in appellees being acquitted of the charge, Blay was a witness against them.  Subsequently, while appellees and Blay were at Illmo, Missouri, waiting for a train, Blay was shot and killed by appellee, John McInturff.  McInturff claimed that he was attacked by Blay and killed him in his own necessary self-defense.  A coroner's jury which investigated the matter, fully exonerated McInturff for his act.  At the trial of this case it was sought to introduce a transcript of the testimony given by Blay in the criminal prosecution against appellees for arson, but this proof was ruled out by the court.  From this transcript, which is in the record, it appears that Blay, who had been a convict in the Missouri State penitentiary, soon after his release and some months prior to the fire in question, came to appellees' farm where they gave him and his family a house to live in and furnished him with some personal property; that after the fire Blay refused to surrender the personal property to appellees and a replevin suit was instituted against him for the same; that subsequently Blay charged appellees with burning the house; that as testified to by Blay, appellees between January 1, 1908, and the time of the fire, offered him both money and property to set fire to

the house; that appellee, John McInturff, took him up into the attic of the kitchen of said house, where the fire that destroyed the house, apparently originated, and showed him preparations that had been made for firing the house, consisting of a pile of old clothing, rags and papers piled around the flue with a candle lying on the floor and a can, which he thought contained coal oil, standing near; that after the fire appellee, Sarah McInturff, admitted her guilt to him.

A great many cases have been concerned with the question when the testimony of a deceased witness given in another trial is admissible in a case and much has been written upon the subject; but in this state, while the matter has been referred to a number of times in the opinions of our higher courts, no general rule governing the question has been laid down. A satisfactory statement of the rule is that laid down in Elliott on Evidence, Vol. 1, secs. 495, 508 and 517, which states, in substance, that such testimony is admissible only under the following circumstances: First, that the person against whom the testimony is offered had the right and opportunity to cross examine the witness when he was examined at the former trial. Second, that the matters in issue were substantially the same in both cases. Third, that the proceedings were between the same parties or their privies in estate, in blood or in law. In this case, appellees had the right and opportunity to cross examine the deceased witness at the former trial under their indictment for arson. The question whether appellees wilfully and maliciously burned or caused to be burned their dwelling house was also the main question in issue here, although there were other questions involved in the present suit with which the other suit was not concerned; but the two suits or proceedings were not between the same parties or their privies in estate, in blood or in law.

The question as to how literally the rule that the

proceedings in the two cases must be between the same parties or their privies, must be complied with, is a mooted one and the reported cases of different jurisdictions and the writers upon the subject are not altogether in harmony.

One of the best considered cases upon the subject is Metropolitan St. Ry. Co. v. Gumby, 99 Fed. Rep. 192 (39 C. C. A. 455), decided by the circuit court of appeals of the United States for the Southern District of New York. That was a suit brought by the mother of a child who had been injured by a street railway, for loss of services. Upon the trial the mother offered in evidence the testimony of a witness who was dead, but who had testified in a former suit by the grandmother, as guardian *ad litem* of the child, against the same defendants, to recover for the pain, suffering, etc., of the child. In that case some twenty of the leading authorities are reviewed and it is there held, that it is not sufficient to entitle the evidence of a deceased witness to be read in a subsequent suit that it should appear that the same issue was involved, that the witness testified under the sanction of an oath, that he was confronted with the person against whom the testimony was offered and that the latter had the opportunity of cross examination, but that it must appear either that the parties were the same, or that the change of parties was not a substantial one, as for example, a change by which one of the opponents is omitted or by which a merely nominal party is added; or as where one was an executor or a grantor of another, and it was held that the testimony of the deceased witness in the case brought by the grandmother of the child, was not admissible in the suit brought by the mother. The difference between the two suits we have under consideration was quite marked; one was a criminal suit and the other a civil suit, one brought in the name of the People of the State of Illinois against appellees to which suit appellant here, could not be a party, while

the other was brought by appellees against appellant, and the People of the State of Illinois could not be a party.

From a consideration of the authorities, we have arrived at the conclusion that the difference in parties between the two suits was so substantial as to justify the court below in excluding the evidence of the deceased witness Blay.

The judgment of the court below will be affirmed.

*Affirmed.*

MR. JUSTICE DUNCAN, having tried this case in the court below, took no part here.